# Exhibit A



**CT Corporation**
**Service of Process Notification**
04/07/2023
CT Log Number 543589657

## Service of Process Transmittal Summary

**TO:**  LEGAL DEPARTMENT - SOP
TESLA, INC.
901 PAGE AVE
FREMONT, CA 94538-7341

**RE:**  **Process Served in Illinois**

**FOR:**  Tesla, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: JOSHUA SANTIAGO, individually and on behalf of similarly situated individuals // To: Tesla, Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Attachment(s), Class Action Complaint, Motion, Memorandum, Certificate |
| **COURT/AGENCY:** | Cook County - Circuit Court, IL<br>Case # 2023CH02523 |
| **NATURE OF ACTION:** | Product Liability Litigation - Lemon Law - 2020 Tesla Model 3 - VIN: 5YJ3E1EB6LF |
| **PROCESS SERVED ON:** | C T Corporation System, Chicago, IL |
| **DATE/METHOD OF SERVICE:** | By Process Server on 04/07/2023 at 13:11 |
| **JURISDICTION SERVED:** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of this summons, not counting the day of service |
| **ATTORNEY(S)/SENDER(S):** | Timothy P. Kingsbury<br>MCGUIRE LAW, P.C.<br>55 W. Wacker Dr., 9th Fl.<br>Chicago, IL 60601<br>312-893-7002 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/10/2023, Expected Purge Date: 04/15/2023<br><br>Image SOP<br><br>Email Notification,  LEGAL DEPARTMENT - SOP  legalsop@tesla.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the



**CT Corporation**
**Service of Process Notification**
04/07/2023
CT Log Number 543589657

included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



## PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Fri, Apr 7, 2023
**Server Name:**                          Larry Biela

| Entity Served | TESLA, INC. |
|---|---|
| Case Number | 23 CH 02523 |
| Jurisdiction | IL |

| Inserts | | |
|---|---|---|
| | | |



Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 14

FILED
4/5/2023 12:51 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02523
Calendar, 14
22166356

FILED DATE: 4/5/2023 12:51 PM   2023CH02523

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

**Summons - Alias Summons**                                    **(12/01/20) CCG 0001 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

JOSHUA SANTIAGO, on behalf of a class,

_____
                              Plaintiff(s)

                v.                              Case No.   2023-CH-02523

TESLA, INC.

_____
                              Defendant(s)

Tesla, Inc.
c/o C T CORPORATION SYSTEM
208 SO LASALLE ST, SUITE 814
CHICAGO, IL 60604

Address of Defendant(s)

Please serve as follows (check one):   ○ Certified Mail   ○ Sheriff Service   ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE**. You will need: a computer with internet access; an email address; a completed Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp; and a credit card to pay any required fees.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons** (12/01/20) CCG 0001 B

FILED DATE: 4/5/2023 12:51 PM   2023CH02523

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**NOTE: Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.**

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

**CONTACT THE CLERK'S OFFICE for information regarding COURT DATES by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.**

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

- Atty. No.: 56618
  Pro Se 99500

Name: McGuire Law, P.C.

Atty. for (if applicable):

Plaintiff

Address: 55 West Wacker Drive, 9th Floor

City: Chicago

State: IL   Zip: 60601

Telephone: (312)-893-7002

Primary Email: aheldut@mcgpc.com

Witness date _____

4/5/2023 12:51 PM IRIS Y. MARTINEZ

IRIS Y. MARTINEZ, Clerk of Court

Service by Certified Mail: _____

Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 4/5/2023 12:51 PM   2023CH02523

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date.  Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:**  CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:**  CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
                    OR
                    ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:**  DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:**  LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:**  ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:**  D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:**  D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:**  D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:**  D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:**  D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

FILED
3/14/2023 11:03 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02523
Calendar, 14
21868258

## CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |  |
|---|---|---|
| JOSHUA SANTIAGO, individually and on behalf of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 2023CH02523 |
| v. | ) ) | Hon. |
| TESLA, INC., a Delaware corporation, | ) ) | |
| *Defendant*. | ) ) ) | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Joshua Santiago, brings this Class Action Complaint on behalf of himself and other consumers who purchased a Tesla vehicle, manufactured and warranted by Defendant Tesla, Inc. ("Tesla"), that suffer from a serious defect in the vehicles' manufacturing, design and/or assembly, which has caused the vehicles to experience false forward collision alerts, impeding the normal operation of the vehicles and posing a safety risk not only to their drivers, but other drivers on America's roads. Plaintiff, on behalf of himself and a class of similarly situated individuals, seeks damages and all other available relief for Defendant's wrongful conduct. Plaintiff alleges as follows based on personal knowledge as to his own experiences, and as to all other matters, upon information and belief, including an investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      This case concerns Defendant's manufacturing and sale of Tesla vehicles ("Class Vehicles") containing a dangerous operational defect: a forward collision monitoring system that often falsely alerts, emitting a noise that is loud and distracting, and can cause the vehicle to

automatically brake when there is no danger of a collision (the "Collision Warning Defect"). The defect thus results in unsafe driving events.

2.      Consumers nationwide have complained of the Collision Warning Defect and the associated safety risks, but Defendant has failed to implement a recall, remedy the Collision Warning Defect, provide adequate repairs, or take appropriate action to protect Tesla drivers, other drivers, and pedestrians from the danger.

3.      As a result of Defendant's wrongful conduct as described herein, owners of the Class Vehicles have suffered damages, including, *inter alia*, (1) overpayment for their vehicles, (2) out-of-pocket expenses as a result of their increased insurance premiums for those owners enrolled in Tesla Insurance, and/or (3) diminished value of their vehicles.

4.      In order to redress these injuries, Plaintiff brings this suit on his own behalf and on behalf of similarly situated individuals, asserting violations of the federal Magnuson-Moss Warranty Act, breach of implied warranty of merchantability, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 *et seq.* (the "ICFA"), and to obtain damages, injunctive relief, restitution, equitable relief, and all other available relief, including and an award of reasonable attorneys' fees and costs.

## PARTIES

5.      Plaintiff Joshua Santiago is a natural person and a resident of Illinois.

6.      Defendant Tesla, Inc. is a Texas corporation with its principal place of business in Austin, Texas.

## JURISDICTION AND VENUE

7.      This Court may assert personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States,

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

FILED DATE: 3/14/2023 11:03 PM    2023CH02523

because Plaintiff's claims arise out of Defendant's unlawful in-state actions. Further, Defendant is doing business within this state such that it has sufficient minimum contacts with Illinois and/or has purposely availed itself of Illinois markets to make it reasonable under the Illinois Constitution and U.S. Constitution for this Court to exercise jurisdiction over the Defendant.

8.      Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because Defendant is doing business in Cook County and thus resides there under § 2-102, and because a substantial part of the events giving rise to Plaintiff's claims occurred in Cook County.

**COMMON FACTUAL ALLEGATIONS**

9.      Defendant is one of the largest electric automobile producers in the United States. Defendant describes its Tesla vehicles as "some of the safest cars on the road." Defendant's advertisements emphasize its "safety" and how it's "built for safety."[1]

10.      Defendant releases new Tesla models each year and regularly updates its older models with "over-the-air" software updates for all drivers. However, none of Defendant's updates have resolved the Collision Warning Defect – an unnecessary false forward collision alert that is loud, distracting, can lead to "phantom braking," and costs Tesla vehicles real money (the "Collision Warning Defect") – and has produced significant problems for owners when the owners attempt a basic fundamental of safe driving: avoiding unnecessary distractions.

11.      Specifically, due to the Collision Warning Defect, Tesla vehicle owners encounter an unexpected, loud and obtrusive forward collision warning that suddenly activates when there is no actual danger or collision risk, or in fact, any other car in sight.

12.      Defendant knew or should have known about the warning issues and dangers posed by the Collision Warning Defect as it regularly updates its Tesla vehicles, or should have fixed the

---

[1] https://www.tesla.com/model3.

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

Collision Warning Defect after receiving a barrage of consumer complaints about the false warning and automatic braking issues. At the very least, Defendant should have disclosed the Collision Warning Defect to consumers before they bought a vehicle possessing the Defect.

13.     Hundreds of complaints regarding the Collision Warning Defect that are substantially similar to the complaints below have been made to the National Highway Traffic Safety Administration ("NHTSA") and to Defendant by owners of many Tesla models nationwide:



February 27, 2023 NHTSA ID NUMBER: 11509315

**Components: VEHICLE SPEED CONTROL, FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11509315

**Incident Date** February 26, 2023

**Consumer Location** SUNNYVALE, CA

**Vehicle Identification Number** 5YJ3E1EA7LF****

**Summary of Complaint**

| CRASH | No | I get "phantom braking" on average about every 2-3 hours of highway driving with cruise control enabled. All of a sudden without any road obstructions or vehicles ahead, the car will suddenly break hard even at highway speeds. Sometimes it happens when I approach an underpass or get to a section where the pavement is darker than before. |
|---|---|---|
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ▾

☐ **Request Research** (Services fees apply)

FILED DATE: 3/14/2023 11:03 PM 2023CH02523

**May 24, 2022** NHTSA ID NUMBER: 11465978

## Components: ELECTRICAL SYSTEM, FORWARD COLLISION AVOIDANCE

⊖

**NHTSA ID Number:** 11465978

**Incident Date** February 25, 2022

**Consumer Location** SAN DIEGO, CA

**Vehicle Identification Number** 5YJ3E1EB6LF****

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | The contact owns a 2020 Tesla Model 3. The contact stated while driving approximately 20 MPH, there was a loud sound coming from the vehicle. There was a warning message to take control of the vehicle displayed. The vehicle was not diagnosed or repaired. The manufacturer was not notified of the failure. The contact related the failure to NHTSA Campaign Number: 22V063000 (Electrical System, Forward Collision Avoidance). The approximate failure mileage was 9,800. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

---

**February 2, 2022** NHTSA ID NUMBER: 11449921

## Components: FORWARD COLLISION AVOIDANCE

⊖

**NHTSA ID Number:** 11449921

**Incident Date** November 20, 2020

**Consumer Location** LOS ANGELES, CA

**Vehicle Identification Number** 5YJ3E1EBXLF****

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | I have experienced phantom breaking twice with my model 3. The first time was on the 101 freeway near Santa Clause Lane outside of Santa Barbara. There was no car in front of me or a hazard on the road but the vehicle made a sudden stop while I was traveling around 55MPH. The second occurrence happened on the 101 freeway near Santa Maria. Again, the vehicle made braked suddenly while traveling around 65MPH. The closest car in front of me was about 100 feet away. There was a car behind me but I was able to quickly hit the gas peddle to avoid an accident. I searched online at the time to see if anyone else had this issue but didn't have much luck. I'm thankful that I saw the Washington Post article. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

**February 2, 2022** NHTSA ID NUMBER: 11449946

## Components: FORWARD COLLISION AVOIDANCE

**NHTSA ID Number:** 11449946

**Incident Date** February 1, 2022

**Consumer Location** DUBLIN, OH

**Vehicle Identification Number** 5YJ3E1EB0LF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | Vehicle approached an upward slope which triggered a forward collision warning and (unsafe) emergency braking. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product ▾**

☐ **Request Research** (Services fees apply)

---

**January 29, 2023** NHTSA ID NUMBER: 11504325

## Components: FORWARD COLLISION AVOIDANCE

**NHTSA ID Number:** 11504325

**Incident Date** January 29, 2023

**Consumer Location** SCOTTSDALE, AZ

**Vehicle Identification Number** 5YJ3E1EB3LF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | On a recent trip, while using the adaptive cruise control on a divided, straight, flat four lane highway, the vehicle would randomly slam on the brakes for absolutely no reason, endangering us and other vehicles behind us, who were not expecting a random slam of the brakes. Driving conditions were ideal - sunny, excellent visibility and very low traffic. There were no oncoming or road-crossing vehicles and no vehicles in front of us on the divided highway to trigger the reaction. This happened 14 times over about 200 miles of driving on our return trip home and over 30 times on the trip out. On the outbound trip, I was using it on both the divided highway and sections where there was only one lane in each direction, so decided to just use the cruise control when there was a divided highway. This is a recent phenomenon, as cruise control has never done that before. The semi-autonomous mode does it all the time as well, so we stopped using it for fear of causing an accident. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

FILED DATE: 3/14/2023 11:03 PM    2023CH02523



October 18, 2022 NHTSA ID NUMBER: 11489733

**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11489733

**Incident Date** October 11, 2022

**Consumer Location** LOS ANGELES, CA

**Vehicle Identification Number** 5YJ3E1EB9LF****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

I had 2 incidents of "phantom braking" in the vehicle this past week. I was just in cruise control, and the roads were in good condition, visibility and skies were clear, there were no cars in front or behind me, and we were cruising about 70 mph. In 2 cases, the car just slowed by itself for a few seconds and then I disengaged the cruise control. In 1 other cases, the car made an abrupt braking from 70 to about 40 mph. I disengaged and then did not use cruise control any longer. I've been told by Tesla service that the car's "radar" feature was replaced/disengaged in lieu of Tesla Vision, which apparently is in "beta" phase. In any event, this should not be happening, especially in just basic cruise control under ideal road conditions.

**1 Affected Product** ▾

☐ **Request Research** (Services fees apply)



2020
**TESLA MODEL Y**
SUV AWD

**16**
RECALLS

INVESTIGATIONS 4
COMPLAINTS 157

★★★★★
OVERALL SAFETY RATING

February 15, 2023 NHTSA ID NUMBER: 11507398

**Components: SERVICE BRAKES, FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11507398

**Incident Date** January 27, 2023

**Consumer Location** EL PASO, TX

**Vehicle Identification Number** 5YJYGDEE5LF****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

Have had several issues with phantom braking. When in cruise control or auto drive there are times nothing is in the roadway but the vehicle will brake in middle of hwy. very dangerous

**1 Affected Product** ▾

☐ **Request Research** (Services fees apply)

FILED DATE: 3/14/2023 11:03 PM    2023CH02523



**2022**
**TESLA MODEL Y 7-SEAT**
SUV AWD

IMAGE NOT AVAILABLE

**11** RECALLS

INVESTIGATIONS 4
COMPLAINTS 446

★★★★★
OVERALL SAFETY RATING

**March 11, 2023** NHTSA ID NUMBER: 11511325
**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11511325

**Incident Date** March 3, 2023

**Consumer Location** BOISE, ID

**Vehicle Identification Number** 7SAYGDEE6NF****

**Summary of Complaint**

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

Phantom braking with Autopilot (adaptive cruise) engaged. 8 hard braking incidents on 300 mile trip. 3 hard braking incidents on the return. Not all incidents can be explained by shadows, bridges or other vehicles. Braking occurred without warning on the interstate with near maximum brake being applied by the vehicle. It is very dangerous to pass a vehicle, have another car trailing you, and then have then have maximum braking with no warning or reason. The incident was reported to Tesla service, but Tesla provided no immediate solution. They stated that the software would improve over time.

**1 Affected Product** ⌄

☐ **Request Research** (Services fees apply)



**2017**
**TESLA MODEL 3**
4 DR RWD

**10** RECALLS

INVESTIGATIONS 4
COMPLAINTS 13

Not been rated
OVERALL SAFETY RATING

**February 3, 2022** NHTSA ID NUMBER: 11450215
**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11450215

**Incident Date** January 20, 2022

**Consumer Location** BURLINGAME, KS

**Vehicle Identification Number** 5YJ3E1EA8HF****

**Summary of Complaint**

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

Many phantom braking incidents both on autopilot and in adaptive cruise control mode result in surprising (and frightening) sudden braking for no reason. In high traffic conditions, this could lead to a possible rear-end collision. The adaptive cruise control has become so unstable in the last few months we will not use it. As this is a mature feature that used to work nearly flawlessly this is very frustrating to go backwards with an update.

**1 Affected Product** ⌄

☐ **Request Research** (Services fees apply)

FILED DATE: 3/14/2023 11:03 PM   2023CH02523



14.     Instead, although Defendant has been consistently notified of the Collision Warning Defect since the release of its Tesla vehicles with auto-driving and cruise control features, it has continued to manufacture, market, and sell Tesla vehicles possessing the Collision Warning Defect.

15.     A superficial internet search reveals numerous forums of hundreds of Tesla owners complaining about the Collision Warning Defect.

16.     Defendant has not disclosed the Collision Warning Defect in any substantial form. There have been no recalls. Nor has Defendant updated its Tesla vehicles with any over-the-air software update to fix the Collision Warning Defect.

17.     Owners have not been otherwise notified of the Collision Warning Defect and, in fact, cannot discover it until they attempt to drive the Tesla vehicle—but this only occurs after they have driven their new or used Tesla off the dealership lot, or after any Tesla delivery has been completed, and the vehicle has already lost substantial value.

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

18.     In addition, during a Tesla earnings call back in October 2020, Elon Musk, Defendant's Chief Executive Office, said insurance someday could represent 30% to 40% of Tesla's auto business. He announced that Tesla is building "a major insurance company."[2] To that end, Tesla Insurance is currently offered in Illinois, Arizona, Colorado, Maryland, Minnesota, Nevada, Ohio, Oregon, Texas, Utah, and Virginia. Specifically, Defendant discloses on its website that it "Rewards Safe Driving" and that policyholders' insurance premiums will be based on real-time driving behavior.[3]

19.     Unfortunately, Tesla drivers' premiums are inflated because of random forward collision warnings as a direct result of the False Forward Defect that Tesla vehicles undergo when there is no actual danger or any car in sight. Defendant unfairly charges its Tesla customers for higher monthly premium fees based on these "unsafe" driving events that never actually occurred.

20.     As a result, Plaintiff and other members of the Class have suffered damages and concrete harm through payment of inflated premium fees to Defendant that they cannot now ever recover.

21.     Nevertheless, as a result of Defendant's wrongful conduct as described, owners of Tesla Vehicles have suffered damages, including, *inter alia*, (1) overpayment for their vehicles, (2) out-of-pocket expenses as a result of increased insurance premiums for those that are enrolled into Tesla Insurance, and/or (3) diminished value of their vehicles.

## FACTS SPECIFIC TO PLAINTIFF

22.     Plaintiff Santiago bought a 2020 Tesla Model 3 in 2021.

---

[2] John Egan, *Tesla Prepares to Start Selling Auto Insurance in Florida*, FORBES (Oct. 27, 2022), https://www.forbes.com/advisor/car-insurance/tesla-insurance/.

[3] Tesla.com/Insurance (last accessed March 14, 2023).

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

23.     Immediately after purchasing his Tesla, Plaintiff Santiago began experiencing the effects of the Collision Warning Defect. Plaintiff Santiago has experienced the effects of the Collision Warning Defect throughout Illinois, including on Illinois roadways and parking lots.

24.     Specifically, Plaintiff has experienced false forward collision signals as a direct result of the Collision Warning Defect while driving through parking lots and while turning at intersections, when no other vehicles or pedestrians were in the vicinity of his Tesla vehicle. Each time the false forward collision signal alarm would go off, it would create unnecessary panic for Plaintiff Santiago and an unnecessary safety risk because of the nature of the loud and obtrusive false collision warning alarm.

25.     Had Plaintiff Santiago known before purchasing his Tesla that it contained the Collision Warning Defect, he would not have decided to purchase that particular vehicle or would have paid significantly less for it.

26.     Plaintiff and his Model 3 are also enrolled in Tesla Insurance, including a usage-based safety discount program which determines the policyholder's premium based on certain driving metrics, including the frequency of safety alerts.

27.     Like many other Model 3s, Plaintiff's Model 3 has on numerous occasions experienced false forward collision warnings when there was no collision risk, or indeed, any car or other item located in the vicinity of Plaintiff's vehicle.

28.     As a result, Plaintiff's monthly insurance premium has increased since when he first enrolled in Tesla Insurance because his "Safety Score" (the score generated by Tesla based on driving habits) has decreased due to the Collision Warning Defect.

29.     Defendant has failed to implement any steps to remedy the false forward collision warnings that Plaintiff has experienced in his vehicle.

**CLASS ACTION ALLEGATIONS**

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

30.     Pursuant to 735 ILCS 5/2-801, Plaintiff brings this action on behalf of a Class and

Subclasses of similarly situated individuals defined as follows:

> The Nationwide Class: All individuals in the United States who, within the applicable limitations period, purchased a Class Vehicle in the United States or its territories.
>
> The Nationwide Tesla Insurance Subclass: All individuals who, within the applicable limitations period, purchased a Class Vehicle the United State or its territories and enrolled in the Tesla Insurance program.
>
> The Illinois Subclass: All individuals in the United States who, within the applicable limitations period, purchased a Class Vehicle in the state of Illinois.
>
> The Illinois Tesla Insurance Subclass: All individuals who, within the applicable limitations period, purchased a Class Vehicle in the state of Illinois and enrolled in the Tesla Insurance program.

31.     Expressly excluded from the Class and Subclasses are any members of the judiciary

assigned to preside over this matter; any officer, director, or employee of Defendant; and any

immediate family members of such officers, directors, or employees.

32.     There are thousands of members of the Class and Subclasses such that joinder of

all members is impracticable. Although the exact number of members of the Class and Subclasses

is presently unavailable to Plaintiff, the members of the Class and Subclasses can be easily

identified through Defendant's records.

33.     Plaintiff will fairly and adequately represent and protect the interests of the other

members of the Class and Subclasses. Plaintiff has retained counsel with substantial experience in

prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to

vigorously prosecuting this action on behalf of the other members of the Class and Subclasses, and

have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to

those of the other members of the Class and Subclasses.

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

34.     Plaintiff's claims are typical of the claims of the other members of the Class and Subclasses, in that the factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class and Subclasses are the same.  Plaintiff and the other members of the Class and Subclasses have all suffered similar harms and damages as a result of Defendant's Collision Warning Defect.

35.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class and Subclasses, and those questions predominate over any questions that may affect individual members of the Class and Subclasses. Common questions for the Class and Subclasses include, but are not limited to:

a)  Whether the Class Vehicles and the technology, software and/or sensors they rely on are defectively designed or manufactured such that they are not suitable for their intended use;

b)  Whether Defendant misrepresented to Plaintiff and the Class and Subclasses members that the Class Vehicles perform safely;

c)  Whether the fact that the Class Vehicles suffer from the Collision Warning Defect would be considered material to a reasonable consumer;

d)  Whether, as a result of Defendant's concealment or failure to disclose material facts, Plaintiff and the members of the Class and Subclasses acted to their detriment by purchasing Class Vehicles manufactured by Defendant;

e)  Whether Defendant was aware of the Collision Warning Defect prior to selling the Class Vehicles;

f)  Whether the Collision Warning Defect constitutes an unreasonable safety risk;

g)  Whether Defendant breached implied warranties with respect to the Class Vehicles;

13

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

h) Whether Defendant had a duty to disclose the defective nature of the Class Vehicles and the Collision Warning Defect to Plaintiff and the members of the Class and Subclasses;

i) Whether Plaintiff and the members of the Class and Subclasses are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

j) Whether Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act when it sold to consumers Class Vehicles that suffered from the Collision Warning Defect;

k) Whether Defendant's conduct constituted unfair or deceptive trade practices under States' consumer protection laws,;

l) Whether Defendant has acted with deliberate indifference to the safety risks posed by the Collision Warning Defect;

m) The proper measure and calculation of damages; and

n) Whether Defendant should be enjoined from engaging in such conduct in the future.

36.   Defendant has acted and/or failed to act on grounds generally applicable to the Plaintiff and the other members of the Class and Subclasses, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclasses, and making injunctive or corresponding declaratory relief appropriate for the Class and Subclasses as a whole.

37.   Absent a class action, most members of the Class and Subclasses would find the cost of litigating their claims to be prohibitive and would have no effective remedy. Unless the

14

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

Class and Subclasses are certified, Defendant will retain the monies it received from the members of the Classes and Subclasses as a result of its unfair conduct.

38.     The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

**COUNT I**
**Breach of Implied Warranties under the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2301,** ***et seq.***
**(on behalf of Plaintiff and the Class and Subclasses)**

39.     Plaintiff incorporates by reference all of the foregoing allegations as though fully set forth herein.

40.     Plaintiff and the other Class members are "consumers" within the meaning of 15 U.S.C. § 2310(3).

41.     Defendant is a "supplier" and "warrantor" within the meanings of sections 15 U.S.C. § 2301(4)–(5).

42.     The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

43.     15 U.S.C. §2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with any implied warranty.

44.     Under 15 U.S.C. § 2310(e), Plaintiff and the Class are not required to provide Defendant notice of this class action and an opportunity to cure until the time the Court determines the representative capacity of Plaintiff under Rule 23.

45.     Defendant represents that its Tesla Service Centers act on its behalf with regards to completing maintenance and warranty repairs and addressing any problems with the Class Vehicles. For instance, Defendant tells Class Vehicle purchasers that Tesla recommends that all

15

FILED DATE: 3/14/2023 11:03 PM  2023CH02523

maintenance, service and repairs be done at a Tesla Service Center or Tesla authorized repair facility in order to avoid voiding warranty coverage or having warranty coverage denied. Defendant controls its Tesla Service Center or its authorized repair facilities' warranty repair protocols, as it provides the special training, materials, special tools, replacement parts, and requires that warranty repairs be performed at Defendant's direction.

46.     Defendant also represents that any warranty may be voided if Class Vehicle owners do not follow Defendant's specific instructions and recommendations regarding the use and operation of the vehicle provided by not installing the vehicle's software updates after notification that there is an update available.

47.     Therefore, with regards to their Class Vehicle purchases, Plaintiff and the other Class and Subclass members dealt with Defendant directly, because Defendant provided warranties to Plaintiff and the Class and Subclass members.

48.     As a matter of law, each Class Vehicle comes with an implied warranty of merchantability whereby each vehicle is warranted by Defendant to be of merchantable quality such that it would pass without objection in the trade and is fit for the ordinary purposes for which it was to be used.

49.     However, Defendant breached this implied warranty of merchantability, as the Class Vehicles are not fit for the ordinary purposes for which they are meant to be used, because their owners cannot reliably or safely drive their vehicles due to the Collision Warning Defect. As opposed to other consumer vehicle owners, Plaintiff and the Class members face random and unnecessarily loud warning signals due to the Collision Warning Defect, and face the risk of phantom braking and loss of control of their vehicles, when driving their Class Vehicles. As such,

16

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

the Collision Warning Defect and its associated dangers directly impairs the Class Vehicles' driveability and reliability and restrict safe vehicle operation.

50.     The Class Vehicles would not pass without objection in the automotive trade, because the dangers of false and unnecessary distractions in the Class Vehicles, as described herein, force Class Vehicle owners to be startled and face the risk of automatic, phantom breaking, directly limiting the Class Vehicles' utility as personal vehicles. The Collision Warning Defect limits the usefulness and operation of the Class Vehicles because it impedes where and when the Class Vehicles can be driven in a safe manner. These circumstances also make them unfit for the ordinary purposes for which such vehicles are used.

51.     Moreover, the Class Vehicles are not adequately labeled because their labeling failed to disclose that they forward collision monitoring systems that frequently falsely alert, failed to disclose the Collision Warning Defect and associated dangers, and did not advise Plaintiff or the Class and Subclass members of the same prior to experiencing the Collision Warning Defect firsthand.

52.     Defendant has been provided notice of the Collison Warning Defect through numerous complaints online, including but not limited to hundreds of complaints to the NHTSA, and to Defendant itself, as well as its own internal engineering knowledge.

53.     Defendant has had numerous opportunities to cure the Collision Warning Defect in all Class Vehicles, through its over-the-air software updates, but it has chosen not to remedy the issue.

54.     Defendant's actions and omissions have deprived Plaintiff and the Class and Subclass members of the benefit of their bargain, have caused their Class Vehicles to be worth less than what Plaintiff and the other Class and Subclass members paid for, and, additionally, have

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

damaged those enrolled in Defendant's Tesla Insurance program due to higher monthly premium fees based on false forward collision alerts. The Defect causes the Class Vehicles to record "unsafe" driving events that never actually occurred.

55.    As a direct and proximate result of Defendant's breach of its duties, the proposed Class and Subclass members received goods with substantially impaired value. Plaintiff and the Class and Subclass members have suffered damages including but not limited to the diminished value of their Class Vehicles and increased insurance premiums.

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for the following relief:

A.    Entry of an order certifying the Class and Subclasses as defined above, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

B.    An award of actual and compensatory damages to Plaintiff and the other members of the Class and Subclasses for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

C.    An award of punitive damages for Defendant's misconduct and deliberate indifference to safety risks;

D.    An award of reasonable attorneys' fees and costs;

E.    An Order enjoining Defendant from continuing to sell vehicles containing the Collision Warning Defect without disclosing the Class Vehicles' false forward collision warnings; and

F.    Such further and other relief as the Court deems reasonable and just.

18

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

## COUNT II
### Breach of Implied Warranty of Merchantability
### (on behalf of Plaintiff and the proposed Class and Subclasses)

56.     Plaintiff incorporates by reference all of the foregoing allegations as though fully set forth herein.

57.     Defendant represents that its Tesla Service Centers act on its behalf with regards to completing maintenance and warranty repairs and addressing any problems with the Class Vehicles. For instance, Defendant tells Class Vehicle purchasers that Tesla recommends that all maintenance, service and repairs be done at a Tesla Service Center or Tesla authorized repair facility in order to avoid voiding warranty coverage or having warranty coverage denied. Defendant controls its Tesla Service Center or its authorized repair facilities' warranty repair protocols, as it provides the special training, materials, special tools, replacement parts, and requires that warranty repairs be performed at Defendant's direction.

58.     Defendant also represents that any warranty may be voided if the Class Vehicle owners do not follow Defendant's specific instructions and recommendations regarding the use and operation of the vehicle provided by not installing the vehicle's software updates after notification that there is an update available.

59.     Therefore, with regards to their Class Vehicle purchases, Plaintiff and the other Class and Subclass members dealt with Defendant directly, because Defendant provided warranties to Plaintiff and the Class and Subclass members.

60.     The implied warranty of merchantability included with each sale or lease of a Class Vehicle means that Defendant warranted that each of the Class Vehicles was fit for the ordinary purposes for which the Class Vehicles would be used.

61. However, Defendant breached this implied warranty of merchantability, as the Class Vehicles are not fit for the ordinary purposes for which they are meant to be used, because their owners cannot reliably or safely drive their vehicles due to the Collision Warning Defect. As opposed to other consumer vehicle owners, Plaintiff and the Class members face random, unnecessarily loud warning signals due to the Collision Warning Defect, and face the risk of phantom braking and loss of control of their vehicles, when driving their Class Vehicles. As such, the Collision Warning Defect and its associated dangers directly impairs the Class Vehicles' driveability and reliability and restrict safe vehicle operation.

62. The Class Vehicles would not pass without objection in the automotive trade, because the dangers of false and unnecessary distractions in the Class Vehicles, as described herein, force Class Vehicle owners to be startled and face the risk of automatic, phantom breaking, directly limiting the Class Vehicles' utility as personal vehicles. The Collision Warning Defect limits the usefulness and operation of the Class Vehicles because it impedes where and when the Class Vehicles can be driven in a safe manner. These circumstances also make them unfit for the ordinary purposes for which such vehicles are used.

63. Moreover, the Class Vehicles are not adequately labeled because their labeling failed to disclose that they contain forward collision monitoring systems that frequently falsely alert, failed to disclose the Collision Warning Defect and associated dangers, and did not advise Plaintiff or the Class and Subclass members of the same prior to experiencing the Collision Warning Defect firsthand.

64. Defendant has been provided notice of the Collision Warning Defect through numerous complaints online, including to the NHTSA, and to Defendant itself, as well as its own internal engineering knowledge and vehicle testing.

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

FILED DATE: 3/14/2023 11:03 PM    2023CH02523

65.    Defendant has had numerous opportunities to cure the Collision Warning Defect in all Class Vehicles, through its over-the-air software updates, but it has chosen not to remedy the issue.

66.    Defendant's actions and omissions have deprived Plaintiff and the Class and Subclass members of the benefit of their bargain, have caused their Class Vehicles to be worth less than what Plaintiff and the other Class and Subclass members paid for, and, additionally, have damaged those enrolled in Defendant's Tesla Insurance program due to higher monthly premium fees based on false forward collision alerts. The Defect causes the Class Vehicles to record "unsafe" driving events that never actually occurred.

67.    As a direct and proximate result of Defendant's breach of implied warranties, the Class and Subclass members received goods with substantially impaired value. Plaintiff and the members of the Class and Subclass have suffered damages including but not limited to the diminished value of their Class Vehicles and increased insurance premiums.

WHEREFORE, Plaintiff, on behalf of himself and the Class and Subclasses, prays for the following relief:

    A. Entry of an order certifying the Class and Subclasses as defined above, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

    B. An award of actual and compensatory damages to Plaintiff and the other members of the Class and Subclasses for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

C. An award of punitive damages for Defendant's misconduct and deliberate indifference to safety risks;

D. An award of reasonable attorneys' fees and costs;

E. An Order enjoining Defendant from continuing to sell vehicles containing the Collision Warning Defect without disclosing the Class Vehicles' false forward collision warnings; and

F. Such further and other relief as the Court deems reasonable and just.

**COUNT III**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act,**
**815 ILCS 505/2**
**(on behalf of Plaintiff and the Illinois Subclass and Illinois Tesla Insurance Subclass)**

68. Plaintiff realleges the foregoing allegations as if fully set forth herein.

69. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act provides in relevant part that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

70. Plaintiff and the members of the Illinois Subclass and Illinois Tesla Insurance Subclass ("Illinois Subclasses") are "consumers" within the meaning of Section 1(e) of the ICFA.

71. Defendant's conduct as alleged herein occurred in the course of trade or commerce.

72. In manufacturing, selling, and designing the Class Vehicles, and in marketing, offering for sale, and selling the defective Class Vehicles, Defendant engaged in unfair or deceptive acts or practices prohibited by the ICFA, including, but not limited to:

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

a.  By representing in its marketing materials that the Class Vehicles contain specially-designed features designed for "safety" and are "built for safety," but in reality the Collision Warning Defect causes Class Vehicle owners unnecessary and dangerous distractions through false collision warnings and the risk of unanticipated braking;

b.  By failing to disclose to, and concealing from, Plaintiff and the members of the Illinois Subclasses that the Class Vehicles contain the Collision Warning Defect, while at the same time representing that the Class Vehicles may be safely operated.

73.     By including such false representations and omissions in its marketing materials provided at the time of sale, as well as other communications to Class Vehicle owners and prospective purchasers, Defendant intended that Class Vehicle purchasers such as Plaintiff and the members of the Illinois Subclasses, rely on such representations and omissions.

74.     Plaintiff and the members of the Illinois Subclasses understood the representations to accurately describe the Class Vehicles' components and operational requirements.

75.     Absent Defendant's misrepresentations and omissions, and had Plaintiff and the members of the Illinois Subclasses been adequately informed of the Collision Warning Defect, they would not have purchased Defendant's Class Vehicles or would have paid significantly less for them. Had Plaintiff and the members of the Illinois Subclasses known that Defendant would not provide repairs to defects in the Class Vehicles promptly, and not provide over-the-air software updates to fix any defects, they would not have paid the prices they did for the Class Vehicles.

76.     Plaintiff and the members of the Illinois Subclasses had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose, because Defendant did not alert Plaintiff and the

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

members of the Illinois Subclasses to such information prior to their purchase of their Class Vehicles.

77.     Defendant intentionally misrepresented, and concealed, material facts concerning the Collision Warning Defect from Plaintiff and the members of the Illinois Subclasses in an effort to induce Plaintiff and the members of the Illinois Subclasses to purchase the Class Vehicles and to purchase the Class Vehicles at a higher price than Plaintiff and the members of the Illinois Subclasses would have otherwise paid had the defect been properly and appropriately disclosed.

78.     Further, Defendant's false and misleading representations, material omissions, and refusal to remedy the Collision Warning Defect are each contrary to public policy, immoral, unethical, oppressive, unscrupulous, and cause substantial injury to consumers by exposing Class Vehicle owners and the general public to the dangers of unexpected and false collision warnings and uncontrolled braking.

79.     As a direct and proximate result of Defendant's deceptive and unfair trade practices, Plaintiff and the other the members of the Illinois Subclasses suffered actual damages, including paying excessive amounts for the Class Vehicles, paying excessive premiums for Tesla Insurance, and expectation damages associated with not receiving the benefit of their bargains with Defendant.

80.     Defendant's conduct is in violation of the ICFA, and pursuant to 815 ILCS 505/10a, Plaintiff and the members of the Illinois Subclasses are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, injunctive relief prohibiting Defendant's unfair and deceptive conduct going forward, and any other penalties or awards that may be appropriate under applicable law.

FILED DATE: 3/14/2023 11:03 PM   2023CH02523

WHEREFORE, Plaintiff, on behalf of himself and the members of the Illinois Subclasses, prays for the following relief:

A.    Entry of an order certifying the Illinois Subclasses as defined above, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

B.    An award of actual or compensatory damages in an amount to be determined at trial;

C.    Injunctive relief prohibiting Defendant's deceptive and unfair practices as described herein;

D.    An award of reasonable attorney's fees and costs; and

E.    Such further and other relief the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: March 14, 2023          JOSHUA SANTIAGO, individually and on behalf of similarly situated individuals

By: /s/ Timothy P. Kingsbury
*One of Plaintiff's Attorneys*

Eugene Y. Turin
Timothy P. Kingsbury
Andrew T. Heldut
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com
tkingsbury@mcgpc.com
aheldut@mcgpc.com

*Attorneys for Plaintiff and the putative class members*

FILED
3/15/2023 2:04 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02523
Calendar, 14
21880416

**CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

JOSHUA SANTIAGO, individually and on behalf of similarly situated individuals,

          *Plaintiff,*

      v.

TESLA, INC. a Delaware corporation,

          *Defendant.*

        )
        )
        )
        )
        )
        )
        )
        )
        )
        )
        )
        )

No. 2023-CH-02523

Hon. Clare J. Quish

FILED DATE: 3/15/2023 2:04 PM    2023CH02523

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY, FOR A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY**

Plaintiff Joshua Santiago, by and through his undersigned counsel, and pursuant to 735 ILCS 5/2-801, moves for entry of an order certifying the Class and Subclasses proposed below, appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel. Alternatively, Plaintiff requests, to the extent the Court determines further evidence is necessary to prove any element of 735 ILCS 5/2-801, that the Court defer consideration of this Motion pending a reasonable period to complete discovery. *See, e.g.*, *Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶¶ 42–43 (citing *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896–97 (7th Cir. 2011)). In support of his Motion, Plaintiff submits the following Memorandum of Law.

Dated: March 15, 2023

Respectfully Submitted,

JOSHUA SANTIAGO, individually and on behalf of similarly situated individuals

By: /s/ Andrew Heldut _____
*One of Plaintiff's Attorneys*

1

FILED DATE: 3/15/2023 2:04 PM   2023CH02523

Eugene Y. Turin
Timothy P. Kingsbury
Andrew T. Heldut
MCGUIRE LAW, P.C. (#56618)
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com
tkingsbury@mcgpc.com
aheldut@mcgpc.com

*Attorneys for Plaintiff and the putative class members*

FILED DATE: 3/15/2023 2:04 PM   2023CH02523

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION OR, ALTERNATIEY, FOR
A DEFFERED CLASS CERTIFICATION RULING PENDING DISCOVERY**

## I.    INTRODUCTION

Plaintiff moves for certification of a national class of all individuals who purchased a Tesla vehicle in the United States or its territories (the "Nationwide Class"). Additionally, Plaintiff seeks certification of a national subclass, including those individuals who purchased a Tesla vehicle and were enrolled into the Tesla Insurance program (the "Nationwide Tesla Insurance Subclass"). Further, Plaintiff seeks the certification of two Illinois-only subclasses of all individuals that purchased a Tesla vehicle in the state of Illinois (the "Illinois Subclass), and all individuals who purchased a Tesla vehicle in the state of Illinois and were enrolled into the Tesla Insurance program (the "Illinois Tesla Insurance Subclass").

Defendant is one of the largest electric automobile producers in the United States. This case concerns Defendant's manufacturing and sale of Tesla vehicles ("Class Vehicles") containing a dangerous operational defect: a forward collision monitoring system that often falsely alerts, emitting a noise that is loud and distracting, and can cause the vehicle to automatically brake when there is no danger of a collision (the "Collision Warning Defect"). The defect thus results in unsafe driving events. Defendant has violated Federal and Illinois laws by failing to implement a recall, remedy the Collision Warning Defect, provide adequate repairs, or take appropriate action to protect Tesla drivers, other drivers, and pedestrians from the danger. As a result of Defendant's wrongful conduct as described herein, owners of the Class Vehicles have suffered damages, including, *inter alia*, (1) overpayment for their vehicles, (2) out-of-pocket expenses as a result of their increased insurance premiums for those owners enrolled in Tesla Insurance, and/or (3) diminished value of their vehicles. In order to redress these injuries, Plaintiff brings this suit on his

3

own behalf and on behalf of similarly situated individuals, asserting violations of the federal

Magnuson-Moss Warranty Act, breach of implied warranty of merchantability, and violations of

the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 *et seq.* (the

"ICFA"), and to obtain damages, injunctive relief, restitution, equitable relief, and all other

available relief, including and an award of reasonable attorneys' fees and costs.

## II.     FACTUAL BACKGROUND

### A.     The Underlying Misconduct.

Defendant is a manufacturer of its Tesla vehicles with a significant Collision Warning

Defect – an unnecessary false forward collision alert that is loud, distracting, can lead to "phantom

braking," and costs Tesla vehicles real money (the "Collision Warning Defect"). (Compl. ¶ 10.)

This defect has produced significant problems for owners when the owners attempt a basic

fundamental of safe driving: avoiding unnecessary distractions. (*Id*.) Hundreds of complaints

regarding the Collision Warning Defect have been made to the National Highway Traffic Safety

Administration ("NHTSA") and to Defendant by owners of many Tesla models nationwide.

(Compl. ¶ 13.) Defendant knew or should have known about the warning issues and dangers posed

by the Collision Warning Defect as it regularly updates its Tesla vehicles with "over-the-air"

software, or should have fixed the Collision Warning Defect after receiving a barrage of consumer

complaints about the false warning and automatic braking issues. (Compl. ¶ 12.) At the very least,

Defendant should have disclosed the Collision Warning Defect to consumers before they bought

a vehicle possessing the Defect. (*Id*.)

Furthermore, many Tesla drivers are also enrolled into the Tesla Insurance program.

Unfortunately, Tesla drivers' premiums are inflated because of random forward collision warnings

as a direct result of the Collision Warning Defect that Tesla vehicles undergo when there is no

FILED DATE: 3/15/2023 2:04 PM    2023CH02523

FILED DATE: 3/15/2023 2:04 PM   2023CH02523

actual danger or any car in sight. Defendant unfairly charges its Tesla customers for higher monthly premium fees based on these "unsafe" driving events that never actually occurred, and as a result Plaintiff and other members of the Class have suffered damages and concrete harm through payment of inflated premium fees to Defendant that they cannot now ever recover. (Compl. ¶¶ 19, 20.)

As a result of Defendant's wrongful conduct as described, owners of Tesla Vehicles have suffered damages, including, *inter alia*, (1) overpayment for their vehicles, (2) out-of-pocket expenses as a result of increased insurance premiums for those that are enrolled into Tesla Insurance, and/or (3) diminished value of their vehicles. (Compl. ¶ 21.)

### B.   The Proposed Class and Subclasses

Plaintiff brings this action on behalf of himself and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class and Subclasses defined as follows:

> The Nationwide Class: All individuals in the United States who, within the applicable limitations period, purchased a Class Vehicle in the United States or its territories.

> The Nationwide Tesla Insurance Subclass: All individuals who, within the applicable limitations period, purchased a Class Vehicle the United State or its territories and enrolled in the Tesla Insurance program.

> The Illinois Subclass: All individuals in the United States who, within the applicable limitations period, purchased a Class Vehicle in the state of Illinois.

> The Illinois Tesla Insurance Subclass: All individuals who, within the applicable limitations period, purchased a Class Vehicle in the state of Illinois and enrolled in the Tesla Insurance program.

(Compl. ¶ 30.) As explained below, the proposed Class and Subclasses satisfy each of the four requirements for certification under Section 2-801 of the Illinois Code of Civil Procedure—numerosity, commonality, adequacy of representation, and fair and efficient adjudication. A class action is not just appropriate here, it is also the only way that the members of the putative Class

and Subclasses can obtain appropriate redress for Defendant's unlawful conduct.

## III.    ARGUMENT

### A.    Standards for Class Certification.

To obtain class certification, it is not necessary for a plaintiff to establish that he will prevail on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (internal quotation marks and citation omitted). As such, in determining whether to certify a proposed class, the Court should accept the allegations of the complaint as true. *Ramirez v. Midway Moving & Storage, Inc*., 378 Ill. App. 3d 51, 53 (1st Dist. 2007).

To proceed with a class action, the movant must satisfy the "prerequisites for the maintenance of a class action" set forth in Section 2-801 of the Illinois Code of Civil Procedure, which provides:

> An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1)    The class is so numerous that joinder of all members is impracticable.
>
> (2)    There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
>
> (3)    The representative parties will fairly and adequately protect the interest of the class.
>
> (4)    The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801. As demonstrated below, each prerequisite is established for the Class and Subclasses, and the Court should therefore certify the proposed Class and Subclasses.

FILED DATE: 3/15/2023 2:04 PM   2023CH02523

FILED DATE: 3/15/2023 2:04 PM   2023CH02523

Section 2-801 is modeled after Rule 23 of the Federal Rules of Civil Procedure and "federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (2005). Circuit courts have broad discretion in determining whether a proposed class meets the requirement for class certification and ought to err in favor of maintaining class certification. *Ramirez*, 378 Ill. App. 3d at 53. While a court may rule on class certification without requiring further discovery, *see* Manual for Complex Litigation (Fourth) § 21.14, at 255 (2004), courts have found that discovery is helpful prior to addressing a motion for class certification. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶ 42 ("If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.") (quoting *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011)).

All the prerequisites for class certification are satisfied here, even though Plaintiff has not yet had an opportunity to engage in and complete discovery. However, in the interests of establishing a more fully developed record before ruling on class certification issues, the Court should defer ruling on this Motion pending the completion of discovery and submission of supplemental briefing.

### B. The Numerosity Requirement is Satisfied.

The first step in certifying a class is a showing that "the class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when "join[ing] such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chicago Med. Sch.*, 69

Ill.2d 320, 337 (1977)). To satisfy this requirement a plaintiff need not demonstrate the exact number of class members, but must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Plaintiff alleges that there are at least thousands of members of the Class and Subclasses. (Complaint at ¶ 32.) Because definitive evidence of numerosity can only come from the records of Defendant and its agents, it is proper to rely upon the allegations of the Complaint in certifying the Class and Subclasses. *See* 2 A. Conte & H. Newberg, Newberg on Class Actions § 7.20, at 66 (stating that where numerosity information is in the sole possession of the party opposing the class, courts generally rely on the complaint as prima facie evidence or defer ruling).

Additionally, the members of the putative Class and Subclasses can be easily and objectively determined from Defendant's records. Further, it would be completely impracticable to join the claims of the members of the Class and Subclasses, because they are disbursed throughout the nation and throughout Illinois, and because absent a class action, few members could afford to bring an individual lawsuit over the amounts at issue in this case, since each individual member's claim is relatively small. *See Gordon*, 224 Ill. App. 3d at 200. Accordingly, the first prerequisite for class certification is met.

### C.  Common Questions of Law and Fact Predominate.

The second requirement of Section 2-801(2) is met where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Such common questions of law or fact exist when the members of the proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.,* 87 Ill.2d 7, 19 (Ill. 1981); *Steinberg*, 69 Ill.2d at 342. These common questions must also predominate over any issues affecting individual class members. *See O-Kay Shoes, Inc.*

8

*v. Rosewell*, 129 Ill. App. 3d 405, 408 (1st Dist. 1984).

Here, the claims of the members of the Class and Subclasses arise out of the same activity by Defendant, are based on the same legal theory, and implicate, among others, the following common issues: whether the Class Vehicles and the technology, software and/or sensors they rely on are defectively designed or manufactured such that they are not suitable for their intended use; whether Defendant misrepresented to Plaintiff and the Class and Subclasses members that the Class Vehicles perform safely; whether the fact that the Class Vehicles suffer from the Collision Warning Defect would be considered material to a reasonable consumer; whether, as a result of Defendant's concealment or failure to disclose material facts, Plaintiff and the members of the Class and Subclasses acted to their detriment by purchasing Class Vehicles manufactured by Defendant; whether Defendant was aware of the Collision Warning Defect prior to selling the Class Vehicles; whether the Collision Warning Defect constitutes an unreasonable safety risk; whether Defendant breached implied warranties with respect to the Class Vehicles; whether Defendant had a duty to disclose the defective nature of the Class Vehicles and the Collision Warning Defect to Plaintiff and the members of the Class and Subclasses; whether Plaintiff and the members of the Class and Subclasses are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; whether Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act when it sold to consumers Class Vehicles that suffered from the Collision Warning Defect; whether Defendant's conduct constituted unfair or deceptive trade practices under States' consumer protection laws,; whether Defendant has acted with deliberate indifference to the safety risks posed by the Collision Warning Defect; the proper measure and calculation of damages; and whether Defendant should be enjoined from engaging in such conduct in the future. (Compl. ¶ 35).

FILED DATE: 3/15/2023 2:04 PM   2023CH02523

As alleged, and as will be shown through discovery, Defendant engaged in a common course of conduct with regards to the Collision Warning Defect. Any potential individualized issues remaining after common issues are decided would be *de minimis*. Accordingly, common issues of fact and law predominate over any individual issues, and Plaintiff has satisfied this hurdle to certification.

### D. Adequate Representation.

The third prong of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). The class representative's interests must be generally aligned with those of the class members, and class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Miner*, 87 Ill.2d at 14; *see also Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1000 (1st Dist. 1991). The purpose of this adequacy of representation requirement is "to insure that all Class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988).

In this case, Plaintiff has the exact same interest as the members of the proposed Class and Subclasses. Plaintiff has alleged that, like the other members of the Class and Subclasses, he has suffered similar harms and damages as a result of Defendant's Collision Warning Defect, including being unlawfully subjected to the inflated policy premiums as a result of the defect. Plaintiff's pursuit of this matter against Defendant demonstrates that he will be a zealous advocate for the Class and Subclasses. Further, proposed class counsel has regularly engaged in major complex and class action litigation in state and federal courts and have been appointed as class counsel in several complex consumer class actions. Accordingly, the proposed class representative and proposed

FILED DATE: 3/15/2023 2:04 PM   2023CH02523

class counsel will adequately protect the interests of the members of the Class and Subclasses, thus satisfying Section 2-801(3).

### E. Fair and Efficient Adjudication of the Controversy.

The final requirement for class certification under 5/2-801 is met where "the class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In applying this prerequisite, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Gordon*, 224 Ill. App. 3d at 204; *Purcell & Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("The predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Because numerosity, commonality and predominance, and adequacy of representation have been satisfied in the instant case, it is "evident" that the appropriateness requirement is met as well.

Other considerations further support certification in this case. A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 586 N.E.2d at 467; *Eshaghi*, 574 N.E.2d at 766 ("In a large and impersonal society, class actions are often the last barricade of…protection."). A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278, at *6. This is especially true in cases involving small consumer transactions, which can involve significant injury to those effected, but result in many small, individual claims. Here, absent a class action, most members of the Class and Subclasses

FILED DATE: 3/15/2023 2:04 PM   2023CH02523

would find the cost of litigating their claims to be prohibitive, and multiple individual actions would be judicially inefficient. *Id.*

Certification of the proposed Class and Subclasses is necessary to ensure that Defendant's conduct becomes compliant with Federal and Illinois law, including the Magnuson-Moss Warranty Act, implied warranty of merchantability, and the Illinois Consumer Fraud and Deceptive Business Practices Act, to ensure that the members of Class and Subclasses and their rights are sufficiently protected, and to compensate those individuals who have had their protected rights violated. Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of members of the Class and Subclasses would be able to obtain redress, or that Defendant would willingly implement the relief sought by Plaintiff and the members of the Class and Subclasses. Thus, proceeding as a class action here is an appropriate method to fairly and efficiently adjudicate the controversy.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the requirements of 735 ILCS 5/2-801 are satisfied. Plaintiff respectfully requests that the Court enter an Order certifying the proposed Class and Subclasses, appointing Plaintiff as Class Representative, appointing McGuire Law, P.C. as Class Counsel, and awarding such additional relief as the Court deems reasonable and just. Alternatively, the Court should defer ruling on this Motion pending the completion of appropriate discovery and supplemental briefing.

Dated: March 15, 2023                       Respectfully Submitted,

                                            JOSHUA SANTIAGO, individually and on behalf
                                            of similarly situated individuals

                                            By: /s/ Andrew Heldut
                                            *One of Plaintiff's Attorneys*

FILED DATE: 3/15/2023 2:04 PM    2023CH02523

Eugene Y. Turin
Timothy P. Kingsbury
Andrew T. Heldut
MCGUIRE LAW, P.C. (#56618)
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com
tkingsbury@mcgpc.com
aheldut@mcgpc.com

*Attorneys for Plaintiff and the putative class members*

FILED DATE: 3/15/2023 2:04 PM   2023CH02523

### **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on March 15, 2023, a copy of *Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery* was filed electronically with the Clerk of Court using the e-filing system.

/s/ Andrew T. Heldut