**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JOSHUA SANTIAGO and JAMES ARNOLD, individually and on behalf of similarly situated individuals, | ) ) ) ) ) | |
| *Plaintiffs,* | ) ) | No. 23-cv-02891 |
| v. | ) ) ) | Hon. Edmond E. Chang |
| TESLA, INC., a Delaware corporation, | ) ) ) | **JURY TRIAL DEMANDED** |
| *Defendant.* | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Joshua Santiago and James Arnold, bring this First Amended Class Action Complaint on behalf of themselves and other consumers who purchased a Tesla vehicle, manufactured and warranted by Defendant Tesla, Inc. ("Tesla"), that suffer from a serious defect in the vehicles' manufacturing, design and/or assembly, which has caused the vehicles to experience false forward collision alerts, impeding the normal operation of the vehicles and posing a safety risk. Plaintiffs, on behalf of themselves and a class of similarly situated individuals, seek damages and all other available relief for Defendant's wrongful conduct. Plaintiffs allege as follows based on personal knowledge as to their own experiences, and as to all other matters, upon information and belief, including an investigation conducted by their attorneys.

### NATURE OF THE ACTION

1.      This case concerns Defendant's manufacturing and sale of Tesla vehicles that have a dangerous defect: a forward collision monitoring system that often falsely alerts, emitting a noise that is loud and distracting, and can cause the vehicle to automatically brake when there is no danger of a collision (the "False Collision Warning Defect").

2.      Consumers nationwide have complained about the False Collision Warning Defect and the associated safety risks, but Defendant has failed to implement a recall, remedy the Defect, provide adequate repairs, or take appropriate action to protect Tesla drivers, other drivers, and pedestrians from the danger it poses.

3.      As a result of Defendant's wrongful conduct as described herein, owners of Defendant's vehicles have suffered damages, including, *inter alia*, overpayment for their vehicles, out-of-pocket expenses as a result of their increased insurance premiums for those owners enrolled in Tesla Insurance, and diminished value of their vehicles.

4.      In order to redress these injuries, Plaintiffs bring this suit on their own behalf and on behalf of similarly situated individuals, asserting violations of the federal Magnuson-Moss Warranty Act, breach of implied warranty of merchantability, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et seq.*, and other states' consumer protection laws, and to obtain damages, injunctive relief, restitution, equitable relief, and all other available relief, including and an award of reasonable attorneys' fees and costs.

## PARTIES

5.      Plaintiff Joshua Santiago is a natural person and a resident of Illinois.

6.      Plaintiff James Arnold is a natural person and a resident of Ohio.

7.      Defendant Tesla, Inc. is a Texas corporation with its principal place of business in Austin, Texas.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) et seq., because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant; and none of the exceptions under subsection § 1332(d) apply.

9.     This Court may assert personal jurisdiction over Defendant and venue is proper in this District because Defendant does business within Illinois and transacts business in Illinois such that it has sufficient minimum contacts with Illinois and/or has purposely availed itself of Illinois markets to make it reasonable for this Court to exercise jurisdiction over Defendant, and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District as Plaintiffs' vehicles exhibited the defects at issue while being driven in this District.

## COMMON FACTUAL ALLEGATIONS

10.     Defendant is one of the largest electric automobile producers in the United States. Defendant describes its Tesla vehicles as "some of the safest cars on the road." Defendant's advertisements emphasize its "safety" and how it's "built for safety."[1]

11.     In particular, Defendant's website during the relevant time period regularly advertised the forward collision system on its vehicles:

---

[1] www.tesla.com/model3.



2



3



4

---

[2] https://web.archive.org/web/20210203153723/https://www.tesla.com/model3.
[3] https://www.tesla.com/models.
[4] https://web.archive.org/web/20210513041621/https://www.tesla.com/modely.

12.     Defendant releases new Tesla models each year and regularly updates its older models with "over-the-air" software updates for all drivers. However, none of Defendant's updates have resolved the False Collision Warning Defect.

13.     Specifically, due to the False Collision Warning Defect, Tesla vehicle owners such as Plaintiffs encounter an unexpected, loud and obtrusive forward collision warning that suddenly activates when there is no actual danger or collision risk, or in fact, any other car or object is present. Beyond the collision warning itself being distracting and dangerous to drivers, the False Collision Warning Defect is also often accompanied by the vehicle automatically stopping or slowing down to prevent an accident with the nonexistent obstacle the vehicles thinks is in front of it—a phenomenon referred to as "phantom braking."

14.     Defendant is well aware of this issue, as evidenced by a recent whistleblower who provided evidence that Defendant had recorded "139 cases of unintentional emergency braking" as well as "383 reported phantom stops resulting from false collision warnings."[5]

15.     In addition, hundreds of complaints regarding the False Collision Warning Defect that are substantially similar to the complaints below have been made to the National Highway Traffic Safety Administration ("NHTSA") and to Defendant by owners of many Tesla models nationwide:

---

[5] https://jalopnik.com/whistleblower-drops-100-gigabytes-of-tesla-secrets-to-g-1850476542.

**February 27, 2023** NHTSA ID NUMBER: 11509315



## Components: VEHICLE SPEED CONTROL, FORWARD COLLISION AVOIDANCE

**NHTSA ID Number:** 11509315

**Incident Date** February 26, 2023

**Consumer Location** SUNNYVALE, CA

**Vehicle Identification Number** 5YJ3E1EA7LF****

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | I get "phantom braking" on average about every 2-3 hours of highway driving with cruise control enabled. All of a sudden without any road obstructions or vehicles ahead, the car will suddenly break hard even at highway speeds. Sometimes it happens when I approach an underpass or get to a section where the pavement is darker than before. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ▾

☐ **Request Research** (Services fees apply)

---

**February 2, 2022** NHTSA ID NUMBER: 11449921

## Components: FORWARD COLLISION AVOIDANCE

**NHTSA ID Number:** 11449921

**Incident Date** November 20, 2020

**Consumer Location** LOS ANGELES, CA

**Vehicle Identification Number** 5YJ3E1EBXLF****

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | I have experienced phantom breaking twice with my model 3. The first time was on the 101 freeway near Santa Clause Lane outside of Santa Barbara. There was no car in front of me or a hazard on the road but the vehicle made a sudden stop while I was traveling around 55MPH. The second occurrence happened on the 101 freeway near Santa Maria. Again, the vehicle made braked suddenly while traveling around 65MPH. The closest car in front of me was about 100 feet away. There was a car behind me but I was able to quickly hit the gas peddle to avoid an accident. I searched online at the time to see if anyone else had this issue but didn't have much luck. I'm thankful that I saw the Washington Post article. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**January 29, 2023** NHTSA ID NUMBER: 11504325

## Components: FORWARD COLLISION AVOIDANCE

**NHTSA ID Number:** 11504325

**Incident Date** January 29, 2023

**Consumer Location** SCOTTSDALE, AZ

**Vehicle Identification Number** 5YJ3E1EB3LF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | On a recent trip, while using the adaptive cruise control on a divided, straight, flat four lane highway, the vehicle would randomly slam on the brakes for absolutly no reason, endangering us and other vehicles behind us, who were not expecting a random slam of the brakes. Driving conditions were ideal - sunny, excellent visibility and very low traffic. There were no oncoming or road-crossing vehicles and no vehicles in front of us on the divided highway to trigger the reaction. This happened 14 times over about 200 miles of driving on our return trip home and over 30 times on the trip out. On the outbound trip, I was using it on both the divided highway and sections where there was only one lane in each direction, so decided to just use the cruise control when there was a divided highway. This is a recent phenomenon, as cruise control has never done that before. The semi-autonomous mode does it all the time as well, so we stopped using it for fear of causing an accident. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**February 2, 2022** NHTSA ID NUMBER: 11449946

## Components: FORWARD COLLISION AVOIDANCE

**NHTSA ID Number:** 11449946

**Incident Date** February 1, 2022

**Consumer Location** DUBLIN, OH

**Vehicle Identification Number** 5YJ3E1EB0LF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | Vehicle approached an upward slope which triggered a forward collision warning and (unsafe) emergency braking. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ▾

☐ **Request Research** (Services fees apply)

**October 18, 2022**  NHTSA ID NUMBER: 11489733

## Components: FORWARD COLLISION AVOIDANCE

**NHTSA ID Number:** 11489733

**Incident Date** October 11, 2022

**Consumer Location** LOS ANGELES, CA

**Vehicle Identification Number** 5YJ3E1EB9LF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | **No** | I had 2 incidents of "phantom braking" in the vehicle this past week. I was just in cruise control, and the roads were in good condition, visibility and skies were clear, there were no cars in front or behind me, and we were cruising about 70 mph. In 2 cases, the car just slowed by itself for a few seconds and then I disengaged the cruise control. In 1 other cases, the car made an abrupt braking from 70 to about 40 mph. I disengaged and then did not use cruise control any longer. I've been told by Tesla service that the car's "radar" feature was replaced/disengaged in lieu of Tesla Vision, which apparently is in "beta" phase. In any event, this should not be happening, especially in just basic cruise control under ideal road conditions. |
| FIRE | **No** | |
| INJURIES | **0** | |
| DEATHS | **0** | |

**1 Affected Product** ▾

☐ **Request Research** (Services fees apply)

---



**2020**
# TESLA MODEL Y
SUV AWD

**16**
RECALLS

INVESTIGATIONS 4

COMPLAINTS 157

★★★★★
**OVERALL SAFETY RATING**

**February 15, 2023**  NHTSA ID NUMBER: 11507398

## Components: SERVICE BRAKES, FORWARD COLLISION AVOIDANCE

**NHTSA ID Number:** 11507398

**Incident Date** January 27, 2023

**Consumer Location** EL PASO, TX

**Vehicle Identification Number** 5YJYGDEE5LF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | **No** | Have had several issues with phantom braking. When in cruise control or auto drive there are times nothing is in the roadway but the vehicle will brake in middle of hwy. very dangerous |
| FIRE | **No** | |
| INJURIES | **0** | |
| DEATHS | **0** | |

**1 Affected Product** ▾

☐ **Request Research** (Services fees apply)



**2022**
## TESLA MODEL Y 7-SEAT
SUV AWD

IMAGE NOT AVAILABLE

**11** INVESTIGATIONS 4
RECALLS COMPLAINTS 446

⭐⭐⭐⭐⭐
OVERALL SAFETY RATING

March 11, 2023 NHTSA ID NUMBER: 11511325
**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11511325

**Incident Date** March 3, 2023

**Consumer Location** BOISE, ID

**Vehicle Identification Number** 7SAYGDEE6NF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | Phantom braking with Autopilot (adaptive cruise) engaged. 8 hard braking incidents on 300 mile trip. 3 hard braking incidents on the return. Not all incidents can be explained by shadows, bridges or other vehicles. Braking occurred without warning on the interstate with near maximum brake being applied by the vehicle. It is very dangerous to pass a vehicle, have another car trailing you, and then have then have maximum braking with no warning or reason. The incident was reported to Tesla service, but Tesla provided no immediate solution. They stated that the software would improve over time. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ▾

☐ **Request Research** (Services fees apply)



**2017**
## TESLA MODEL 3
4 DR RWD

**10** INVESTIGATIONS 4
RECALLS COMPLAINTS 13

Not been rated
OVERALL SAFETY RATING

February 3, 2022 NHTSA ID NUMBER: 11450215
**Components: FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11450215

**Incident Date** January 20, 2022

**Consumer Location** BURLINGAME, KS

**Vehicle Identification Number** 5YJ3E1EA8HF****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | Many phantom braking incidents both on autopilot and in adaptive cruise control mode result in surprising (and frightening) sudden braking for no reason. In high traffic conditions, this could lead to a possible rear-end collision. The adaptive cruise control has become so unstable in the last few months we will not use it. As this is a mature feature that used to work nearly flawlessly this is very frustrating to go backwards with an update. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ▾

☐ **Request Research** (Services fees apply)





16.     Indeed, out of a total of 222 complaints on the NHTSA relating to the 2020 Tesla Model 3 that Plaintiff Santiago owns, almost *half*, 104, are about "forward collision avoidance."[6]

17.     It is a similar story for Plaintiff Arnold's 2019 Tesla Model 3, with 352 complaints total, 129 of which are about "forward collision avoidance."[7]

---

[6] www.nhtsa.gov/vehicle/2020/TESLA/MODEL%2525203/4%252520DR/RWD#complaints.
[7] www.nhtsa.gov/vehicle/2019/TESLA/MODEL%2525203/4%252520DR/RWD.

18.     Although Defendant has been consistently notified of the False Collision Warning Defect since the release of its Tesla vehicles with auto-driving and cruise control features, it has continued to manufacture, market, and sell Tesla vehicles that have the False Collision Warning Defect.

19.     Defendant has not disclosed the False Collision Warning Defect in any substantial form. There have been no recalls. Nor has Defendant updated its Tesla vehicles with any over-the-air software update to fix the False Collision Warning Defect.

20.     Owners have not been otherwise notified of the False Collision Warning Defect and, in fact, cannot discover it until they attempt to drive the Tesla vehicle—but this only occurs after they have driven their new or used Tesla off the dealership lot, or after any Tesla delivery has been completed, and the vehicle has already lost substantial value.

21.     Furthermore, Defendant's vehicles are connected to Defendant's over-the-air update network. Indeed, Defendant's vehicles are often considered as much a software-as-a-service as a conventional product given that their proprietary software and continuous updates from Defendant are a major factor in many consumers', including Plaintiffs', decision to purchase them.[8]

22.     As such, consumers expect and rely on Defendant to insure that their cars' software is properly maintained by Defendant and that any updates do not create any safety hazards and that any safety issues are promptly addressed. However, Defendant has failed to ensure that its vehicles' software – which it has connection to and control over – properly functions and does not create safety hazards through false collision warnings.

---

[8] *See* www.tesla.com/service; www.nytimes.com/2022/01/08/business/teslas-computer-chips-supply-chain.html ("Cars becoming increasingly digital, defined by their software as much as their engines and transmissions").

23.     Making Defendant's False Collision Warning Defect particularly malicious is the fact that Defendant offers its own driving-behavior based insurance that adjusts vehicle owners premiums based on the driving data collected by its vehicles.[9] Indeed, during a Tesla earnings call back in October 2020, Elon Musk, Defendant's Chief Executive Office, said insurance someday could represent 30% to 40% of Tesla's auto business. He announced that Tesla is building "a major insurance company."[10] To that end, Tesla Insurance is currently offered in Illinois, Arizona, Colorado, Maryland, Minnesota, Nevada, Ohio, Oregon, Texas, Utah, and Virginia.

24.     Accordingly, owners of Tesla vehicles who signed up for Tesla's insurance with the hope that they would have premiums that reflect their safe driving habits, as Plaintiffs have done, have actually had their premiums inflated because of false forward collision warnings caused by the Defect that are labeled "unsafe" driving events. As a result, Plaintiffs and the other members of the Class and Subclasses have suffered damages and concrete harm through payment of inflated premium fees to Defendant that they cannot now ever recover.

25.     As a result of Defendant's wrongful conduct as described above, owners of Defendant's vehicles have suffered damages, including, *inter alia*, (1) overpayment for their vehicles, (2) out-of-pocket expenses as a result of increased insurance premiums for those that are enrolled into Tesla Insurance, and/or (3) diminished value of their vehicles.

## FACTS SPECIFIC TO PLAINTIFF SANTIAGO

26.     Plaintiff Santiago bought a 2020 Tesla Model 3 in February 2021 from a third-party seller of Defendant's vehicles in Illinois.

---

[9] Tesla.com/Insurance.

[10] www.forbes.com/advisor/car-insurance/tesla-insurance/.

27.     Immediately after purchasing his Tesla, Plaintiff Santiago began experiencing the False Collision Warning Defect.

28.     Specifically, Plaintiff Santiago has had false forward collision warnings randomly appear while driving through parking lots and while turning at intersections, when no other vehicles or pedestrians were in front of the vehicle or potentially creating a danger of collision. Each time the false forward collision signal alarm would go off, it would create unnecessary panic for Plaintiff Santiago and an unnecessary safety risk because of the nature of the loud and obtrusive false collision warning alarm.

29.     In addition, on at least two occasions Plaintiff Santiago has experienced phantom braking as a result of the False Collision Warning Defect, with his vehicle applying the brakes entirely on its own and when no car, person, or other object was anywhere in front of it, creating a danger of Plaintiff Santiago being hit from behind by the cars following him.

30.     The safety features that Defendant had advertised as to its Model 3, including specifically its collision avoidance technology, were major factors in Plaintiff Santiago's decision to purchase his Model 3. Plaintiff Santiago reviewed Defendant's website page for its Model 3 at the time that he purchased it, including the section explaining that the vehicle came with forward facing cameras and sensors to detect objects in its path. Had Plaintiff Santiago known before purchasing his Tesla that it contained the False Collision Warning Defect, he would not have decided to purchase that particular vehicle or would have paid significantly less for it.

31.     Furthermore, Plaintiff Santiago's vehicle was connected to Defendant's over-the-air update network and Plaintiff Santiago relied on Defendant to make sure that his vehicles' software was updated to remedy any safety issues and that any updates would, at a minimum, not cause any safety hazards.

32.     However, Defendant's software in Plaintiff Santiago's vehicle was not safe, and the updates that Defendant installed on Plaintiff Santiago's vehicle did not remedy the False Collision Warning Defect.

33.     Plaintiff Santiago and his Model 3 were also at all times enrolled in Tesla Insurance, including a usage-based safety discount program which determines the policyholder's premium based on certain driving metrics, including the frequency of safety alerts.

34.     Due to the false collision warnings described above, Plaintiff Santiago's monthly insurance premium have increased since when he first enrolled in Tesla Insurance because his "Safety Score" (the score generated by Tesla based on driving habits) has decreased as the collision warnings were reported as unsafe driving events.

35.     Plaintiff Santiago would not have purchased his vehicle nor enrolled in Tesla Insurance had he been aware that it would suffer from the False Collision Warning Defect and that Defendant would fail to ensure that his vehicles' software was safe, and has suffered monetary damages as a result thereof.

**FACTS SPECIFIC TO PLAINTIFF ARNOLD**

36.     Plaintiff Arnold bought a 2019 Tesla Model 3 Long Range in April 2019 directly from Defendant and took delivery of it in Ohio. Plaintiff Arnold sent a letter to Defendant within the prescribed 30-day period to opt out of the arbitration clause that was included as part of his purchase agreement.

37.     Approximately in October 2021 Plaintiff Arnold experienced the False Collision Warning Defect for the first time when he was driving and had a collision warning appear even though there were no vehicles or other objects in front of his vehicle.

38. Since then, Plaintiff Arnold has experienced numerous false collision warnings, including at least two instances where they caused phantom braking, one of which was while he was driving on a freeway. The False Collision Warning Defect has thus created extremely dangerous situations for Plaintiff Arnold where he effectively did not have control over his vehicle's brakes.

39. The safety features that Defendant had advertised as to its Model 3, including specifically its collision avoidance technology, were major factors in Plaintiff Arnold's decision to purchase his Model 3. Plaintiff Arnold reviewed Defendant's website page for its Model 3 at the time that he purchased it, including the section explaining that the vehicle came with forward facing cameras and sensors to detect objects in its path. Had Plaintiff Arnold known before purchasing his Tesla that it contained the False Collision Warning Defect, he would not have decided to purchase that particular vehicle or would have paid significantly less for it.

40. Furthermore, Plaintiff Arnold's vehicle was connected to Defendant's over-the-air update network and Plaintiff Arnold relied on Defendant to make sure that his vehicles' software was updated to remedy any safety issues and that any updates would, at a minimum, not cause any safety hazards.

41. However, Defendant's software in Plaintiff Arnold's vehicle was not safe, and the updates that Defendant installed on Plaintiff Arnold's vehicle did not remedy the False Collision Warning Defect.

42. Plaintiff Arnold, like Plaintiff Santiago, also had his Model 3 enrolled in Tesla Insurance, including a usage-based safety discount program which determines the policyholder's premium based on certain driving metrics, including the frequency of safety alerts.

43. Due to the false collision warnings described above, Plaintiff Arnold's monthly

insurance premium has increased since when he first enrolled in Tesla Insurance because his "Safety Score" (the score generated by Tesla based on driving habits) has decreased as the collision warnings are reported as unsafe driving events. Plaintiff Arnold would not have purchased his vehicle nor enrolled in Tesla Insurance had he been aware that it would suffer from the False Collision Warning Defect and that Defendant would fail to ensure that his vehicle's' software was safe, and has suffered monetary damages as a result thereof.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs bring this action on behalf of themselves and similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek to represent a Class and Subclasses of similarly situated individuals defined as follows:

> The Nationwide Class: All individuals in the United States who, within the applicable limitations period, purchased a 2019 or newer Tesla Model S, Model X, Model 3, or Model Y vehicle ("Tesla Vehicle") in the United States or its territories.

> The Illinois Subclass: All individuals in the United States who, within the applicable limitations period, purchased a Tesla Vehicle in the state of Illinois.

> The Ohio Subclass: All individuals who, within the applicable limitations period, purchased a Tesla Vehicle in the state of Ohio.

45.     Expressly excluded from the Class and Subclasses are any members of the judiciary assigned to preside over this matter; any officer, director, or employee of Defendant; and any immediate family members of such officers, directors, or employees.

46.     There are thousands of members of the Class and Subclasses such that joinder of all members is impracticable. Although the exact number of members of the Class and Subclasses is presently unavailable to Plaintiffs, the members of the Class and Subclasses can be easily identified through Defendant's records.

47.     Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class and Subclasses. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclasses, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class and Subclasses.

48.     Plaintiffs' claims are typical of the claims of the other members of the Class and Subclasses, in that the factual and legal bases of Defendant's liability to Plaintiffs and to the other members of the Classes and Subclasses are the same. Plaintiffs and the other members of the Class and Subclasses have all suffered similar harms and damages as a result of Defendant's False Collision Warning Defect.

49.     There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class and Subclasses, and those questions predominate over any questions that may affect individual members of the Class and Subclasses. Common questions for the Class and Subclasses include, but are not limited to:

a)      Whether Defendant's Tesla Vehicles have a software and/or hardware defect that causes false forward collision warnings;

b)      Whether the false forward collision warnings make Defendant's Tesla Vehicles unmerchantable;

c)      Whether Defendant violated consumer protection laws when it sold Tesla Vehicles that had the False Collision Warning Defect;

d)      Whether Plaintiffs and the members of the Class and Subclasses are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

e)      The proper measure and calculation of damages; and

f)      Whether Defendant should be enjoined from engaging in such conduct in the future.

50.     Defendant has acted and/or failed to act on grounds generally applicable to the Plaintiffs and the other members of the Class and Subclasses, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclasses, and making injunctive or corresponding declaratory relief appropriate for the Class and Subclasses as a whole.

51.     Absent a class action, most members of the Class and Subclasses would find the cost of litigating their claims to be prohibitive and would have no effective remedy. Unless the Class and Subclasses are certified, Defendant will retain the monies it received from the members of the Classes and Subclasses as a result of its unfair conduct.

52.     The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

<u>COUNT I</u>
**Breach of Implied Warranties under the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2301, *et seq.***
**(on behalf of Plaintiffs and the Class and Subclasses)**

53.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

54.     Plaintiffs and the other Class members are "consumers" within the meaning of 15 U.S.C. § 2310(3).

55.     Defendant is a "supplier" and "warrantor" within the meanings of sections 15 U.S.C. § 2301(4)–(5).

56.     The Tesla Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

57.     15 U.S.C. §2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with any implied warranty.

58.     As a matter of law, each Tesla Vehicle comes with an implied warranty of merchantability whereby each vehicle is warranted by Defendant to be of merchantable quality such that it would pass without objection in the trade and is fit for the ordinary purposes for which it was to be used.

59.     Defendant's Tesla Vehicles incorporate proprietary software that is critical to their functioning and which Defendant has complete control over, including the ability to force updates in the event of recalls. Furthermore, Defendant regularly provides "optional" updates to its Tesla Vehicles software that it repeatedly reminds drivers about on a near daily basis to enforce widespread adoption.

60.     The Tesla Vehicles' software, and Defendant's continued support and regular updates to it are a material reason behind Class Members' purchases of the Tesla Vehicles. Indeed, Plaintiffs and the other members of the Class would not have bought the Tesla Vehicles that they bought had it not been for Defendant's software that operated the vehicles and Defendant's continued updates and support for the software.

61.     Defendant also represents that any warranty may be voided if Tesla Vehicle owners do not follow Defendant's specific instructions and recommendations regarding the use and operation of its Tesla Vehicles, including not installing any vehicle software updates after notification that there is an update available.

62.     Accordingly, unlike traditional consumer products where the manufacturer has no further connection or involvement after the product is sold, Defendant maintains control over key features of the Tesla Vehicles throughout the lifetime of the vehicles. As such, regardless of

whether a vehicle owner purchased a Tesla Vehicle directly from Defendant as Plaintiff Arnold did, or through a third-party as Plaintiff Santiago did, they nonetheless receive critical software updates directly from Defendant and rely on Defendant to ensure that their vehicles are safe to drive.

63.     For these reasons, the implied warranty of merchantability for the Tesla Vehicles necessarily includes the software provided by Defendant with its Tesla Vehicles that Defendant continuously maintains and updates and which is necessary for the Tesla Vehicles to operate.

64.     Defendant breached the implied warranty of merchantability, as the Tesla Vehicles are not fit for the ordinary purposes for which they are meant to be used, because their owners cannot reliably or safely drive their vehicles due to the False Collision Warning Defect.

65.     Plaintiffs and the other Class members face distracting and dangerous warning signals due to the False Collision Warning Defect, as well as phantom braking and loss of control of their vehicles, when driving their Tesla Vehicles. As such, the False Collision Warning Defect and its associated dangers directly impairs the Tesla Vehicles' driveability and reliability and makes them unsafe to operate.

66.     The Tesla Vehicles would not pass without objection in the automotive trade and they are unfit for the ordinary purposes for which such vehicles are used because they create a significant safety hazard by presenting drives with forward collision warnings when there is in fact no danger of collision and an even greater safety hazard when their software automatically applies the brakes effectively taking control of the vehicle away from the driver.

67.     As evidenced by internal communications obtained from a Tesla whistleblower, Defendant has had extensive knowledge and awareness that its Tesla Vehicles have the False Collision Warning Defect. In addition, Defendant has been provided notice of the Defect through

numerous complaints online, including but not limited to hundreds of complaints to the NHTSA, and to Defendant itself.

68.     Defendant has had numerous opportunities to cure the False Collision Warning Defect in its Class Vehicles as it is able to issue instantaneous over-the-air updates, but despite providing numerous updates of various kinds during the lifetime of the Tesla Vehicles, it has failed to remedy the Defect.

69.     Defendant's actions and omissions have deprived Plaintiffs and the Class members of the benefit of their bargain, have caused their Tesla Vehicles to be worth less than what Plaintiffs and the other Class members paid for, and, additionally, have damaged those enrolled in Defendant's Tesla Insurance program due to higher monthly premium fees based on false forward collision alerts.

## COUNT II
### Breach of Implied Warranty of Merchantability
### (on behalf of Plaintiffs and the proposed Class and Subclasses)

70.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

71.     As a matter of law, each Tesla Vehicle comes with an implied warranty of merchantability whereby each vehicle is warranted by Defendant to be of merchantable quality such that it would pass without objection in the trade and is fit for the ordinary purposes for which it was to be used.

72.     Defendant's Tesla Vehicles incorporate proprietary software that is critical to their functioning and which Defendant has complete control over, including the ability to force updates in the event of recalls. Furthermore, Defendant regularly provides "optional" updates to its Tesla

Vehicles software that it repeatedly reminds drivers about on a near daily basis to enforce widespread adoption.

73.     The Tesla Vehicles' software, and Defendant's continued support and regular updates to it are a material reason behind Class Members' purchases of the Tesla Vehicles. Indeed, Plaintiffs and the other members of the Class would not have bought the Tesla Vehicles that they bought had it not been for Defendant's software that operated the vehicles and Defendant's continued updates and support for the software.

74.     Defendant also represents that any warranty may be voided if Tesla Vehicle owners do not follow Defendant's specific instructions and recommendations regarding the use and operation of its Tesla Vehicles, including not installing any vehicle software updates after notification that there is an update available.

75.     Accordingly, unlike traditional consumer products where the manufacturer has no further connection or involvement after the product is sold, Defendant maintains control over key features of the Tesla Vehicles throughout the lifetime of the vehicles. As such, regardless of whether a vehicle owner purchased a Tesla Vehicle directly from Defendant as Plaintiff Arnold did, or through a third-party as Plaintiff Santiago did, they nonetheless receive critical software updates directly from Defendant and rely on Defendant to ensure that their vehicles are safe to drive.

76.     For these reasons, the implied warranty of merchantability for the Tesla Vehicles necessarily includes the software provided by Defendant with its Tesla Vehicles that Defendant continuously maintains and updates and which is necessary for the Tesla Vehicles to operate.

77.     Defendant breached the implied warranty of merchantability, as the Tesla Vehicles are not fit for the ordinary purposes for which they are meant to be used, because their owners cannot reliably or safely drive their vehicles due to the False Collision Warning Defect.

78.     Plaintiffs and the other Class members face distracting and dangerous warning signals due to the False Collision Warning Defect, as well as phantom braking and loss of control of their vehicles, when driving their Tesla Vehicles. As such, the False Collision Warning Defect and its associated dangers directly impairs the Tesla Vehicles' driveability and reliability and makes them unsafe to operate.

79.     The Tesla Vehicles would not pass without objection in the automotive trade and they are unfit for the ordinary purposes for which such vehicles are used because they create a significant safety hazard by presenting drives with forward collision warnings when there is in fact no danger of collision and an even greater safety hazard when their software automatically applies the brakes effectively taking control of the vehicle away from the driver.

80.     As evidenced by internal communications obtained from a Tesla whistleblower, Defendant has had extensive knowledge and awareness that its Tesla Vehicles have the False Collision Warning Defect. In addition, Defendant has been provided notice of the Defect through numerous complaints online, including but not limited to hundreds of complaints to the NHTSA, and to Defendant itself.

81.     Defendant has had numerous opportunities to cure the False Collision Warning Defect in its Class Vehicles as it is able to issue instantaneous over-the-air updates, but despite providing numerous updates of various kinds during the lifetime of the Tesla Vehicles, it has failed to remedy the Defect.

82.     Defendant's actions and omissions have deprived Plaintiffs and the Class members of the benefit of their bargain, have caused their Tesla Vehicles to be worth less than what Plaintiffs and the other Class members paid for, and, additionally, have damaged those enrolled in Defendant's Tesla Insurance program due to higher monthly premium fees based on false forward collision alerts.

**COUNT III**
**For Violations of Consumer Protection Laws**
**(on behalf of Plaintiffs and the Class and Subclasses)**

83.     All paragraphs of the Complaint are expressly incorporated as if fully re-written and re-alleged herein.

84.     The Ohio Consumer Sales Practices Act, the ICFA, as well as other materially identical consumer fraud statutes enacted by states throughout the country, prohibit deceptive acts and practices in the sale and marketing of products such as Defendant's Tesla Vehicles.

85.     Plaintiffs and the other members of the Class and Subclasses are "consumers" as defined under the Ohio Consumer Sales Practices Act, the ICFA, and other states' consumer protection laws

86.     Defendant was a "supplier," as defined in the Ohio Consumer Sales Practices Act, and other states' consumer protection laws.

87.     Plaintiffs and the other members of the Class and Subclasses members purchased their Tesla Vehicles through "consumer transactions" and in the course of "commerce" as defined in the Ohio Consumer Sales Practices Act, the ICFA, and other states' consumer protection laws.

88.     Defendant's actions in advertising the safety systems on its Tesla Vehicles and the various cameras and sensors that were installed while failing to disclose that its Tesla vehicles have the False Collision Warning Defect and that the software that is an integral and material part of why consumers such as Plaintiffs and the other members of the Class and Subclasses purchased

their Tesla Vehicles does not actually permit for the safe operation of the Tesla Vehicles, constitutes an unfair and deceptive trade practice under the ICFA, the Ohio Consumer Protection Act, and other states' consumer protection laws.

89. Plaintiffs and the other members of the Class and Subclasses reasonably relied on Defendant's advertisements as to the safety of Tesla Vehicles and their sensors, cameras, and software as well as Defendant's omission of any information about the False Collision Warning Defect in choosing to purchase Defendant's Tesla Vehicles, and would not have purchased them, or would have paid materially less for them, had Defendant not made the deceptive and unfair representations and omissions.

90. As a direct and proximate result of Defendant's deceptive advertising and omissions as to its Tesla Vehicles, Plaintiffs and the other members of the Class and Subclasses have suffered actual damages, including damages in the form of excess premiums paid on their insurance for those who were enrolled in Defendant's driving based insurance policies.

91. Defendant's conduct is in violation of the Ohio Consumer Sales Practices Act, the ICFA, and other states' consumer protection laws, and Plaintiffs and the other members of the Class and Subclasses are entitled to damages in an amount to be proven at trial, reasonable attorney's fees, injunctive relief prohibiting Defendant's deceptive advertising going forward, and any other penalties or awards that may be appropriate under applicable law.

WHEREFORE, Plaintiffs, on behalf of themselves and the other members of the Class and Subclass, prays for the following relief:

    1. Entry of an order certifying the Class and Subclasses as defined above, appointing Plaintiffs as class representatives, and appointing Plaintiffs' counsel as class counsel;

2. An award of actual and compensatory damages to Plaintiffs and the other members of the Class and Subclasses for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

3. An award of reasonable attorneys' fees and costs;

4. An Order enjoining Defendant from continuing to sell vehicles containing the Collision Warning Defect without disclosing the Defect; and

5. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.


Dated: June 14, 2023

JOSHUA SANTIAGO and JAMES ARNOLD, individually and on behalf of similarly situated individuals

By: */s/ Eugene Y. Turin*
    *One of Plaintiffs' Attorneys*


Eugene Y. Turin
Timothy P. Kingsbury
Andrew T. Heldut
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com
tkingsbury@mcgpc.com
aheldut@mcgpc.com

*Attorneys for Plaintiffs and the putative class members*