UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA SANTIAGO, individually and on behalf of similarly situated individuals, <br><br> *Plaintiff*, <br><br> v. <br><br> TESLA, INC., a Delaware corporation <br><br> *Defendant*. | Civil Action No. 1:23-cv-02891 <br><br> Hon. Edmond E. Chang |

**DEFENDANT TESLA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Joshua Santiago still cannot state viable claims against Tesla, Inc. ("Tesla"). In response to Tesla's previous motion to dismiss, Santiago amended his complaint to add a new plaintiff, James Arnold, and new claims under Ohio law. *See* ECF No. 14. But after Tesla moved to dismiss the First Amended Complaint ("FAC"), noting various claim-specific deficiencies and a glaring lack of personal jurisdiction over Arnold's claims, Arnold filed a notice of voluntary dismissal (which the Court accepted), and Santiago dropped his claim under the Magnuson-Moss Warranty Act and request for injunctive relief. *See* ECF No. 30; Opp. at 2 n.2.

This procedural maneuvering leaves the parties largely where they started, and Santiago's FAC fares no better than his original complaint. Santiago fails to address caselaw from this district establishing his lack of standing to bring claims on behalf of non-Illinois plaintiffs, and his own cited authorities arose in a procedural posture not present here. As to his implied warranty claim, Santiago concedes that Illinois requires privity between a purchaser and manufacturer (which is not present here since he purchased his vehicle from an unidentified third party), and that Illinois law requires pre-suit notice (which he did not provide). He tries to invoke exceptions to those

requirements that multiple courts in this district have declined to follow given their dubious basis in Illinois law. And while Santiago claims to have pleaded unmerchantability, his allegations are deficient, asserting a mere two instances of false collision warning signals in low-risk circumstances. Santiago's contentions regarding his ICFA claims are equally unavailing—he cannot identify actionable false statements, his unfair conduct theory replicates his deceptive misrepresentation theory, and he has not pleaded Tesla's pre-purchase knowledge of the defect. Finally, Santiago is not entitled to injunctive relief because his allegations belie any likelihood of future purchases from Tesla. The Court should therefore dismiss his claims with prejudice.

## I. Santiago Does Not Have Standing to Bring Nationwide Claims.

Santiago lacks standing to pursue claims on behalf of non-Illinois class members. "Courts in this district routinely dismiss" *at the pleading stage* "class claims where named plaintiffs seek to represent proposed class members from other states." *Brown v. Auto-Owners Ins. Co.*, 2022 WL 2442548, at *2 (N.D. Ill. June 1, 2022). Santiago contends that Tesla's standing argument is premature and should be deferred until class certification, Opp. at 5, but he makes no effort to grapple with, or even mention, the cases cited in Tesla's motion—all of which dismissed out-of-state claims for lack of standing on a Rule 12 motion. *See* Mot. at 6 (citing *Brown*, 2022 WL 2442548, at *2; *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022, at *5–6 (N.D. Ill. Feb. 26, 2019); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013)).

Santiago's own cited authorities are distinguishable. For instance, in both *Carrol v. S.C. Johnsons & Son, Inc.* and *Bietsch v. Sergeant's Pet Care Prod., Inc.*, courts evaluated defendants' motions as "motion[s] to strike class allegations under Rule 23," which involve a "rigorous analysis" of various "factual and legal issues," including potential "variation in the law from state

2

to state." 2018 WL 1695421, at *5 (N.D. Ill. Mar. 29, 2018); *see* 2016 WL 1011512, at *11 (N.D. Ill. Mar. 15, 2016) (evaluating a motion to strike class allegations under Rule 23). Because the parties had not "full[y] brief[ed]" the relevant issues, the court denied plaintiffs' motions. *Carrol*, 2018 WL 1695421, at *5; *see Bietsch*, 2016 WL 1011512, at *11 (finding "the proposed inquiry into the impact of state law variations premature"). Here, by contrast, Tesla has not moved to strike Santiago's class allegations under Rule 23; it moved to dismiss Santiago's nationwide claims for lack of standing under Rule 12(b)(1). And Tesla's standing argument does not raise complex legal and factual issues such as variations in state law. To the contrary, it depends on Santiago's failure to allege a connection between his claims and any state besides Illinois.

Santiago's other case law is equally distinguishable or otherwise unpersuasive. *Fuchs v. Menard, Inc.* analyzed the existence of "*personal jurisdiction* . . . as to the out-of-state claims alleged by the out-of-state (and not yet certified) class members"—a question no longer at issue in this action given the voluntary dismissal of Ohio plaintiff James Arnold's claims. 2017 WL 4339821, at *7 (N.D. Ill. Sept. 29, 2017) (emphasis added); *see* ECF No. 30. And *Burton v. Hodgson Mill, Inc.* addressed the nationwide standing issue in a single sentence, stating without any analysis or citation to authority that "[t]he Court finds that resolution of this issue is premature, and will be better addressed at the class certification phase." 2017 WL 1282882, at *7 (S.D. Ill. Apr. 6, 2017). This Court should instead follow the ample and well-reasoned caselaw in this district holding that dismissal of putative nationwide claims for lack of standing is required at the pleading stage where, as here, the named plaintiff suffered no injury outside his home state.

3

**II. Santiago's Implied Warranty Claim Fails for Multiple Independent Reasons.**

**A. Santiago Was Not in Privity With Tesla and Did Not Deal Directly with Tesla.**

Santiago concedes that he purchased his vehicle from a "third-party seller" and therefore lacks privity with Tesla, which is required for implied warranty claims under Illinois law. Opp. at 4; Mot. at 7. His efforts to evade that requirement fall flat. First, Santiago contends that privity is a factual issue that cannot be decided at the pleading stage. Opp. at 6. But as with his contentions regarding standing, Santiago ignores the decisions cited in Tesla's motion wherein numerous courts dismissed warranty claims for lack of privity under Rule 12(b)(6). *See* Mot. at 8 (citing *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1056 (N.D. Ill. 2022); *Pickens v. Mercedes-Benz USA, LLC*, 2021 WL 5050289, at *3 (N.D. Ill. Nov. 1, 2021); *Quitno v. Gen. Motors, LLC*, 2020 WL 777273, at *5 (N.D. Ill. Feb. 18, 2020); *Hackett v. BMW of N. Am., LLC*, 2011 WL 2647991, at *2 (N.D. Ill. Jun. 30, 2011); *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1000 (N.D. Ill. 2008); *Lantz v. Am. Honda Motor Co., Inc.*, 2007 WL 1424614, at *11 (N.D. Ill. May 14, 2007)). All of those courts dismissed implied warranty claims at the pleading stage for lack of privity, and those precedents foreclose Santiago's argument that it is improper to do so here.

Santiago next contends that his allegations fall within a purported "direct dealing" exception to the privity standard. Opp. at 8–9. But multiple courts in this district have "doubt[ed] whether] the Illinois Supreme Court would recognize *any* exceptions to the requirement of privity for implied warranty claims." *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1123 (N.D. Ill. 2019) (emphasis added) (collecting cases). Santiago fails to address that authority in his opposition. In any event, Santiago's direct dealing argument relies on cases where plaintiffs had pre-sale interactions with the manufacturers' agents—a circumstance that is not present here,

where Santiago purchased his vehicle from an unidentified third-party and there are no allegations that he interacted with Tesla's agents. *See* FAC ¶ 26; *In re Rust-Oleum Restore Mktg. Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 806 (N.D. Ill. 2016) (describing allegations that defendant "had direct dealings with Plaintiffs and putative class members through its agents, dealers, and/or representatives"); *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 705 (N.D. Ill. 2016) ("As in . . . . *In re Rust–Oleum*, Elward alleges that she and other remote customers had a direct relationship with Electrolux dishwasher retailers, who are Electrolux's agents."). Santiago cannot rely on this potential exception since he admittedly purchased his vehicle from an unidentified third-party.

Finally, Santiago cites no case law to support his contention that he can be said to have dealt directly with Tesla through his vehicle's over-the-air software network. And even under *Elward* and *In re Rust-Oleum*—neither of which involved software, and both of which involved *pre-sale* contact with the manufacturer—Santiago's claims of *post-sale* software patches are clearly insufficient. *See In re Rust-Oleum*, 155 F. Supp. 3d at 806; *Elward*, 214 F. Supp. 3d at 705. Given the uncertain legal status of the direct dealing exception and the lack of on-point case law supporting its application here, the Court should not apply this exception to Santiago's claim.

**B.   Santiago Has Not Adequately Alleged That His Vehicle Was Unmerchantable.**

Santiago's contentions regarding merchantability are equally unavailing. To start, Santiago mischaracterizes Tesla's argument, which does not, as he claims, require him to "allege that he was actually involved in an accident." Opp. at 7. Instead, Tesla merely pointed out that Santiago fails to allege a persistent defect that interferes with the safe operation of his vehicle, as required by controlling Illinois law. Mot. at 9–10. Santiago claims to have experienced the defect on just two occasions, "while driving through parking lots and while turning at intersections" and "when

5

no car, person, or other object was anywhere in front of it"—*i.e.*, when any purported safety risk was minimal or even non-existent. FAC ¶¶ 28–29. Nor does he even allege that he sought any repairs. *Cf. Mooradian v. FCA US, LLC*, 2017 WL 4869060, at *7 (N.D. Ohio Oct. 27, 2017) (concluding that a vehicle was not unmerchantable when it underwent "one or two repairs, which apparently solved any defect-related issue [plaintiff] experienced for at least six months, and possibly permanently").

Those allegations distinguish this case from the authorities he cites in his opposition. Unlike the FAC, *O'Connor v. Ford Motor Co.* involved wide-ranging allegations of persistent safety concerns such as loss of "acceleration/shifting capabilities," "slipping and jerking when changing gears," activation of "limp mode," and "lurch[ing] backwards," as well as allegations that plaintiffs sought multiple repairs that did not correct the alleged transmission defects. *See* 567 F. Supp. 3d 915, 939–40 (N.D. Ill. 2021). Santiago's out-of-circuit cases are equally distinguishable. *See Clark v. Am. Honda Motor Co., Inc.*, 528 F. Supp. 3d 1108, 1120 (C.D. Cal. 2021) (assessing allegations that vehicles "unexpectedly and dramatically decelerate[d], *particularly at highway speeds*" (emphasis added)); *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 971, 977 (N.D. Cal. 2018) (analyzing an alleged "door ajar defect" that created "impaired visibility while night driving," "vulnerability to intruders," and "danger to children when doors cannot be locked properly," as well as allegations that consumers "presented their vehicles to the dealers for repair"); *Kingston v. FCA US LLC*, 2020 WL 2845282, at *4 (C.D. Cal. Mar. 25, 2020) (discussing a defect that created a "safety hazard from [] spilled fuel").

C. **Santiago Failed to Provide the Required Notice.**

Santiago also cannot overcome his failure to give Tesla notice of the alleged defect, as required under Illinois law. Santiago seeks to invoke an exception to the notice requirement based

on Tesla's purported "knowledge of the defect," but his own case law confirms that this exception applies only when the manufacturer "has actual knowledge of the defect *of the particular product*." *Allstate Ins. Co. v. Daimler Chrysler*, 2004 WL 442679, at *2 (N.D. Ill. 2004) (emphasis added).[1]

Santiago's cited authorities gloss this "particular product" requirement, finding it satisfied when "the defendants already know of the defect as to the entire product line." *Flynn v. FCA US LLC*, 2016 WL 5341749, at *7 (S.D. Ill. Sept. 23, 2016) (citing *Stella v. LVMH Perfumes & Cosmetics, USA, Inc.*, 564 F. Supp. 2d 833, 837 (N.D. Ill. 2008)); *see also Hedges v. Earth*, 2015 WL 1843029, at *3 (N.D. Ill. Apr. 21, 2015) (applying the knowledge exception based on allegations that the manufacturer "kn[ew] that none of its shoes [could] possibly do what [it] warrant[ed] they [could] do"). But this loose articulation of the knowledge exception's "particular product" requirement is dubious. As one court in this district recently explained, "numerous courts have declined to follow these decisions [*Hedges* and *Stella*], finding them either inconsistent with or completely contrary to Illinois law." *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1055 (N.D. Ill. 2022). Indeed, the Illinois Supreme Court has made clear that "*even if a manufacturer is aware of problems with a particular product line, the notice requirement . . . is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer*." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 590 (Ill. 1996) (emphasis added). Santiago conveniently fails to mention this decision, nor does he grapple with the caselaw from this district that properly follows *Connick* and rejects *Stella*'s incorrect articulation of the actual knowledge requirement. *See, e.g.*, *Block v. Lifeway Foods, Inc.*, 2017 WL 3895565 (N.D. Ill. Sept. 6, 2017) (rejecting *Stella* on the ground that it was contrary to

---

[1] Although *Allstate* dealt with the knowledge exception in the context of express warranty claims, *see id.*, this exception applies equally to implied warranty claims, *see* Mot. at 11.

*Connick*); *Muir v. NBTY, Inc.*, 2016 WL 5234596, at *9 (N.D. Ill. Sept. 22, 2016) (same); *see also O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 715–16 (N.D. Ill. 2020) (rejecting plaintiff's efforts to relax the knowledge exception's requirements and dismissing his warranty claims for lack of notice).

The Court should reject Santiago's invitation to depart from *Connick*'s controlling legal standard and conclude that the lack of pre-suit notice bars his claim because he fails to allege that Tesla had actual knowledge of the purported defect in his particular vehicle. *See* Mot. 10–11.

### III. The ICFA Claim Must Be Dismissed.

#### A. Santiago's Misrepresentation-Based ICFA Theory Does Not Plead Actionable False Statements.

Nor has Santiago satisfied the relevant pleading requirements for his misrepresentation-based ICFA claim. Santiago points to content on Tesla's website indicating that its Model 3 vehicle "came with forward facing cameras and sensors to detect objects in its path," "forward-facing radar [that] provides a long-range view of distant objects," and "ultrasonic sensors," Opp. at 10 (quoting FAC ¶¶ 11, 30), but he fails to allege anything about these statements "that is purportedly false," *O'Connor*, 477 F. Supp. 3d at 719. Santiago does not claim that his vehicle lacked any of these features, and he ignores authority concluding that generic descriptions of a vehicle's components do not support a misrepresentation claim. *See Fleury v. Gen. Motors LLC*, --- F. Supp.3d---, 2023 WL 1450284, at *4 (N.D. Ill. 2023) (plaintiff "failed to identify a false or deceptive statement" when pointing to straightforward descriptions of his vehicle's features in the owner's manual). And while Santiago claims that the website's statement that the vehicle's sensors "prevent[] potential collisions" is false, his failure to allege the occurrence of any such collision belies this claim. Opp. at 10 (quoting FAC ¶ 11). This is especially true given the weakness of his safety-related allegations concerning merchantability. *See supra* Part II.B (describing allegations of a

mere two instances of phantom braking while Santiago was travelling at low speeds in parking lots and while turning).

Santiago's remaining allegations are mere puffery and cannot support his consumer fraud claim. He asserts that whether a particular statement is puffery is "generally a factual question," Opp. at 10, but he again ignores how courts have dismissed claims based on non-actionable puffery at the pleading stage. *See, e.g.*, *Pickens*, 2021 WL 5050289, at \*4 (dismissing claim because plaintiff's allegations that "Mercedes's advertisements and the Napleton salesperson claimed that the car was 'safe' and 'top quality'" were "too vague" and mere "puffery") (collecting cases). And while Santiago attempts to distinguish *Pickens*, those efforts fall short, as that case involved nearly identical allegations as his claims here. *Compare id.* at \*2 (allegations that "the advertisements and the salesperson assured [plaintiff] that Mercedes cars are 'of superior quality and the highest safety standards'" were mere "puffing"); *with* FAC ¶ 10 (alleging that Tesla claims its vehicles are "some of the safest cars on the road" and are "built for safety").

Santiago's own case law, by contrast, involved specific, verifiable statements that differ from the allegations here. *See Muir v. Playtex Prods.*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013) (defendant's statement that its deodorant was "Proven #1 in Odor Control" was not puffery because it left "no doubt as to the criterion" and was "capable of precise meaning, as underscored by Playtex's use of the word 'proven' and the existence of scientific studies conducted by Playtex"); *Bietsch*, 2016 WL 1011512, at \*4 (dog treat packaging that "convey[ed] that the Pur Luv Treats are nutritious, [and] promis[ed] a 'guaranteed analysis' of the essential nutrients contained in the Pur Luv Treats in accordance with the 'AAFCO Dog Food Nutrient Profiles'" was "verifiable" and therefore not puffery). And while Santiago points to government crash test data on the NHTSA webpage, Opp. at 10–11, he cites no authority to support his position that such

9

data alone can transform a general statement about "safety" into actionable fraud. That position runs counter to numerous cases involving other vehicle manufacturers (whose vehicles are also subject to NHTSA oversight) where courts have found that generalized statements about a vehicle's safety are puffery. *See e.g.*, *Pickens*, 2021 WL 5050289, at *4 (finding that "vague assertions of safety" were mere puffery in case against Mercedes-Benz USA, LLC); *Costa v. FCA US LLC*, 542 F. Supp. 3d 83, 101 (D. Mass. 2021) ("[G]eneral statements about big-picture concepts such as trust, security, reputation, and safety are non-actionable puffery."). Santiago's failure to point to any specific statements about safety compels dismissal of this claim.

### B. Santiago's Unfairness-Based ICFA Theory is Duplicative and Should be Dismissed.

Santiago's unfair conduct theory of ICFA liability also comes up short. He first contends that he has satisfied the statute's "unfairness" prong by pleading that Tesla engaged in false advertising. Opp. 11–12. But under Illinois law, when a claim of unfairness rests on *the same allegations of false advertising* that underlie a fraud-based ICFA theory, courts dismiss the unfair conduct claim as duplicative. *See, e.g., Quitno*, 2020 WL 777273, at *4 (dismissing an unfair practices claim and observing that "[b]ecause Plaintiff predicates her unfair practice allegation [] upon Defendant's allegedly deceptive statements, merely citing the unfair practices' prong of the ICFA cannot transform her claim"). Here, Santiago's allegations regarding Tesla's misrepresentations and fraudulent omissions are intertwined, *see* FAC ¶¶ 88–90, and therefore fall under the "deceptive practices" prong of the ICFA. *See Stavropoulos v. Hewlett-Packard Co.*, 2014 WL 7190809, at *3 (N.D. Ill. Dec. 17, 2014) ("While generally a plaintiff may allege that conduct is unfair under ICFA without alleging that the conduct is deceptive, Stavropoulos' complaint is plainly based on allegedly deceptive, rather than unfair or unscrupulous, conduct." (internal quotation marks and citation omitted)). Santiago does not meaningfully contest that

allegations of "false advertising" ground his claims of fraud and unfairness alike. Indeed, his own Opposition makes this point, as his arguments regarding Tesla's purported "misrepresentation" cite to nearly all of same passages of the FAC as his arguments regarding Tesla's purported "unfair act[s]" in the form of "false advertising." *Compare* Opp. at 10–11 (citing FAC ¶¶ 10, 11, 13, 28–30); with Opp. at 12 (citing FAC ¶¶ 10, 11, 13, 28, 29). In any event, Santiago's "false advertising" argument is unavailing because, as explained above, Santiago has not plausibly alleged that Tesla's online content concerning its Model 3 vehicle were false. *See supra* part III.A. His case is thus unlike *Bonahoom v. Staples, Inc.*, where plaintiff's complaint "ma[de] numerous detailed factual allegations of false advertising." 2021 WL 1020986, at *5 (N.D. Ill. Mar. 17, 2021); *see* Opp. at 11, 12 (citing *Bonahoom*).

Santiago cannot salvage this claim based on his allegations that the purported defect allegedly increased his insurance premiums. Opp. at 12. Santiago does not support this allegation with any specific facts, such as the amount of money he paid in increased premiums. FAC ¶ 24. In any event, allegations that he paid additional money as a result of the alleged defect does not establish that the alleged conduct is unfair under any of the three options: that it "offends public policy," is "immoral, unethical, oppressive, or unscrupulous," or "causes substantial injury to consumers." *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002) (explaining criteria for measuring unfairness). *Robinson*—the primary case Santiago relies on—actually forecloses that argument, since the court held that allegations that a lease imposed double penalties by requiring "both an excess mileage penalty and payment for excess wear and tear" did not "describe conduct so unfair as to allow a recovery." *Id.* at 962. Santiago's cursory allegation that he is incurring additional monetary damages due to purportedly inflated insurance premiums falls short under his own caselaw.

### C. Santiago's Omission-Based ICFA Theory Fails for Lack of Knowledge.

Santiago's ICFA claim premised on Tesla's supposed omissions is similarly deficient given his failure to allege that Tesla had pre-purchase knowledge of the purported defect. *See Sherwin v. Samsung Elecs. Am., Inc.*, 2018 WL 11216896, at *4 (N.D. Ill. Mar. 2, 2018) ("[I]n a case of fraud by omission, one would have to have knowledge of the fact at issue in order to be able to conceal it." (internal quotation marks omitted)). Claiming that "'knowledge' of the defect can be 'pled generally,'" Santiago attempts to relax the knowledge requirement and asserts that allegations of consumer complaints lodged with NHTSA are enough. Opp. at 13 (citing *Coss v. Playtex Prods.*, 2009 WL 2245657, at *5 (N.D. Ill. July 10, 2009)). But Santiago makes no effort to grapple with Tesla's cited cases demonstrating that a few NHTSA complaints cannot plausibly establish pre-sale knowledge of the defect, particularly in light of the Model 3 vehicle's high sales volume (approximately 2.6 million vehicles). *See* Mot. 14–15 & n.4.

In any event, Santiago's own case law makes clear that the defendant must have knowledge of the defect *at the time of plaintiff's purchase*, which he does not plausibly allege. *See Coss*, 2009 WL 2245657, at *5 ("To violate the ICFA, defendant must know*, at the time of the sale,* about the material fact it purportedly concealed or omitted.") (emphasis added); *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 916 (N.D. Ill. 2013) ("Thus, Plaintiffs have sufficiently alleged that Unilever had knowledge of the alleged defect *at* the time they purchased the Hair Treatment."). Santiago's allegations cannot satisfy this dispositive element of the knowledge requirement. He points to "complaints relating to false collision warnings in a 2017 and 2019 Model 3," Opp. 13, but the two cited complaints actually date from February 2022 and February 2021, respectively. *See* FAC ¶ 11. Santiago bought his vehicle on an unspecified day in February 2021, *see* FAC ¶ 11, which leaves only a single consumer complaint that could possibly predate his purchase. One isolated complaint

cannot plausibly establish Tesla's knowledge of the defect as required under Illinois law. *See Sherwin*, 2018 WL 11216896, at *5 (concluding that "handful" of consumer complaints, only one of which predated plaintiff's purchase, did not adequately plead knowledge of the defect).

## IV. Santiago Lacks Standing to Seek Injunctive Relief

Although it is unclear whether Santiago is still attempting to pursue injunctive relief, Tesla addresses his arguments out of an abundance of caution. *Compare* Opp. at 2 n.2 (explaining that Santiago "will not be seeking injunctive relief") *with* Opp. at 14 (stating that "Plaintiff Has Standing to Seek Injunctive Relief"). Santiago lacks standing to seek an injunction because he has not adequately alleged a likelihood of future harm. *See* Mot. at 18.

Santiago's response once more mischaracterizes Tesla's arguments. Tesla does not assert, as Santiago claims, that "once a plaintiff alleges injury based on deceptive conduct there can be no claim for injunctive relief." Opp. at 14; *see id.* (first citing *Carrol*, 2018 WL 1695421, at *3–4; and then citing *Muir*, 2016 WL 5234596, at *10). Rather, Tesla's Motion makes the more nuanced point that Santiago's particular allegations—that he would not have purchased his vehicle had he known that it suffered from a purported defect, *see* FAC ¶¶ 30, 35—undercut a likelihood of future harm. Because Santiago specifically claims he would not have bought his Tesla if he had known of the alleged defect prior to purchase, his current awareness of the defect forecloses any claim that he is likely to purchase another Tesla in the future. *See Mednick v. Precor, Inc.*, 2016 WL 5390955, at *8 (N.D. Ill. Sept. 27, 2016) (dismissing for lack of standing to pursue injunctive relief when "Plaintiffs certainly d[id] not allege that, having discovered Precor's deception, they may still buy Precor's products. In fact, Plaintiffs specifically alleged facts suggesting that it is extremely unlikely that they [would] purchase Precor's supposed defective machines again") (collecting cases).

# CONCLUSION

Even with its on-the-fly modifications, Santiago's case still suffers from fatal standing deficiencies, namely, his lack of standing under Rule 12(b)(1) to bring nationwide claims or his ephemeral and contradictory attempts to seek injunctive relief. Across the board, Santiago's claims for breach implied warranty also fail to meet the standards required in Illinois: he lacks privity with Tesla having purchased his vehicle from a third-party seller, he scarcely alleges that his vehicle is unmerchantable but for two minor and entirely inconsequential incidents, and he never provides evidence of the required pre-suit notice. Finally, his efforts to evade the pleading requirements of the ICFA are futile, relying on generic statements and puffery that are insufficient to state a claim in Illinois and then applying a duplicative argument on unfair conduct, before finally alleging an opaque claim of omission and knowledge based on a handful of consumer complaints to NHTSA that, save for a single example, postdate his purchase. For the foregoing reasons, Tesla respectfully requests that the Court grant this Motion and dismiss the FAC with prejudice.

Respectfully submitted this 25th day of September, 2023.

*/s/ Susan M. Clare*
Livia M. Kiser
KING & SPALDING LLP
110 N. Wacker Dr., Ste. 3800
Chicago, IL 60606
T: (312) 995-6333
lkiser@kslaw.com

Susan M. Clare
KING & SPALDING LLP
1180 Peachtree St. NE, Ste. 1600
Atlanta, GA 30309
T: (404) 572-4600
sclare@kslaw.com

*Attorneys for Tesla, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2023, I submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system. Notice of this filing will be sent to all counsel of record via the Court's CM/ECF automated filing system.

*/s/ Susan M. Clare*
Susan M. Clare

*Attorney for Tesla, Inc.*
