## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOSHUA SANTIAGO, individually and on behalf of others similarly situated,

  Plaintiff,

  v.

TESLA, INC., a Delaware Corporation

  Defendant.

Case No. 23 CV 2891

Hon. Georgia N. Alexakis

## MEMORANDUM OPINION AND ORDER

Plaintiff Joshua Santiago brings this putative class action complaint against defendant Tesla, Inc. based on an alleged defect in his 2020 Tesla Model 3. Santiago claims that his Tesla's forward collision monitoring system gives false warnings and suddenly brakes on its own, even when no forward collision risk is present. Tesla has moved to dismiss Santiago's first amended complaint [14] for lack of standing to pursue a nationwide class and for failure to state a claim. [22].

For the reasons discussed below, the Court grants Tesla's motion to dismiss in part and denies it in part.

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need only contain factual allegations that, accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the pleading stage, the Court must "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). But "allegations in the form of legal conclusions are insufficient." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## BACKGROUND

In February 2021, Santiago purchased a 2020 Tesla Model 3 from a third-party seller of Tesla vehicles in Illinois. [14] ¶ 26. Tesla cars are equipped with a forward collision monitoring system that uses sensors to warn drivers of upcoming objects in the car's path. *Id.* ¶ 11. Santiago alleges that this system—both in his car and other Tesla cars—is defective. *Id.* ¶ 1. According to Santiago, due to defects, Tesla owners "encounter an unexpected, loud and obtrusive forward collision warning that suddenly activates when there is no actual danger or collision risk, or in fact, any other car or object is present." *Id.* ¶ 13. Santiago alleges that this warning "is often accompanied by the vehicle automatically stopping or slowing down to prevent an accident with the nonexistent obstacle the vehicle[] thinks is in front of it," a

phenomenon called "phantom braking." *Id.* Santiago maintains that he has experienced such false warnings while driving his Tesla and that they have "create[d] unnecessary panic" and "an unnecessary safety risk because of the … loud and obtrusive false collision warning alarm." *Id.* ¶ 28. On at least two occasions, Santiago continues, the false alarm "creat[ed] a danger of [him] being hit from behind by the cars following him." *Id.* ¶ 29.

Santiago stresses that Tesla is "well aware" of the defect. *Id.* ¶ 14. To support this assertion, he points to a whistleblower's report that Tesla had recorded "139 cases of unintentional emergency braking" and "383 reported phantom stops resulting from false collision warnings." *Id.* In addition, Santiago alleges that "hundreds of complaints regarding the False Collision Warning Defect … have been made to the National Highway Traffic Safety Administration ("NHTSA") and to Defendant by owners of many Tesla models nationwide." *Id.* ¶ 15. Santiago's complaint includes 10 of these NHTSA complaints, which consumers filed between February 3, 2021, and February 27, 2023. *Id.* ¶ 13.

Tesla regularly updates its older models with over-the-air software updates, but Santiago alleges that Tesla has failed to remedy the defect at issue via these updates. *Id.* ¶¶ 12, 21, 59, 68, 81. Further, Santiago maintains that he "would not have purchased his vehicle … had he been aware that it would suffer from the False Collision Defect and that Defendant would fail to ensure that his vehicles' software was safe" and that he "has suffered monetary damages as a result." *Id.* ¶ 35.

Santiago is also enrolled in Tesla's insurance program, which "determines the policyholder's premium based on certain driving metrics, including the frequency of safety alerts." *Id.* ¶ 33. Santiago claims that his monthly insurance premiums (and the putative class members' premiums) have increased because Tesla classifies the false collision warnings as unsafe driving events. *Id.* ¶¶ 24, 35.

On March 14, 2023, Santiago filed a class action complaint in the Circuit Court of Cook County, Illinois. [1-1]. His original complaint alleged (1) breach of implied warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA") (Count I), (2) breach of implied warranty of merchantability (Count II), and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count III). *Id.* The original complaint sought both damages and injunctive relief. *Id.* ¶ 80.

On May 8, 2023, Tesla removed the case to federal court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 based on diversity of citizenship. [1]. One week later, Tesla moved to dismiss the complaint for failure to state a claim. [10]. In lieu of responding, the next month, Santiago filed his first amended complaint, this time naming an additional plaintiff, James Arnold, and adding an additional subclass of Ohio Tesla purchasers. [14] ¶ 44. Although Counts I and II remained unchanged, Count III of the amended complaint sought relief not just under the ICFA, but also under the Ohio Consumer Sales Practices Act and "other materially identical consumer fraud statutes enacted by states throughout the country." *Id.* ¶ 84.

DISCUSSION

Tesla has moved to dismiss the first amended complaint. [22]. When Santiago and Arnold filed their response to Tesla's motion, they simultaneously voluntarily dismissed without prejudice Arnold's claims. [30, 31]. Then, in his response, Santiago stated that he "will not be proceeding" with his Count I claim under the MMWA, nor will he be seeking any form of injunctive relief. [29] at 2, n.2. The Court therefore dismisses Santiago's MMWA claim and his claim for injunctive relief.

That leaves Santiago's claim for breach of implied warranty of merchantability (Count II) and his ICFA claim (Count III). Tesla moves to dismiss these claims because, it argues, Santiago lacks standing to pursue a nationwide class and because he has failed to state a claim. The Court considers each argument in turn.

## A. Article III Standing

Article III of the U.S. Constitution limits federal courts to adjudication of "Cases" and "Controversies." U.S. Const. art. III, § 2. "Standing to bring and maintain a suit is an essential component of this case-or-controversy requirement." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013). To establish he has standing, Santiago must allege (1) he has suffered an "injury in fact," (2) there is a "causal connection between the injury and the conduct complained of," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). In determining whether standing exists, the Court takes all well-pleaded allegations of the complaint as true unless they are refuted in a defendant's affidavit.

*See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). To establish standing as a class representative, a plaintiff must "possess the same interest and suffer the same injury shared by all members of the class he represents." *Keele v. Wexler*, 149 F.3d 589, 592–93 (7th Cir. 1998); *see also Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[A] person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.").

Tesla contends that Santiago lacks standing to bring claims under consumer protection laws in states besides Illinois. Specifically, the company urges that Santiago has "no connection to those states and [has] suffered no injury under those states' laws." [22] at 6. Santiago responds that this question is premature and should be delayed until the class certification stage. [29] at 5.

Courts in this district take differing approaches to a plaintiff's capacity to represent a nationwide class. *See Slowinski v. BlueTriton Brands, Inc.*, No. 24-CV-513, 2024 WL 3757097, at *7 (N.D. Ill. Aug. 9, 2024). Some courts (including those upon which Tesla relies) see the issue as a threshold jurisdictional question. *See, e.g.*, *Brown v. Auto-Owners Ins. Co.*, No. 1:21-CV-02597, 2022 WL 2442548, at *2 (N.D. Ill. June 1, 2022); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 CV 3690, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013). They reason that "[p]laintiffs do not possess the same interest and have not suffered the same injury as any proposed out-of-state class members where those out-of-state injuries are governed by different laws." *Brown*, 2022 WL 2442548, at *2.

6

But the "prevailing view" in this district is that "the issue is best framed through the class-certification lens, not standing." *Clark v. Blue Diamond Growers*, No. 22-CV-1591, 2023 WL 4351464, at *6 (N.D. Ill. July 5, 2023) (collecting cases). Under this view, whether a plaintiff has the representative capacity to assert a legal theory on behalf of class members in other states is really a question about a plaintiff's ability to satisfy Rule 23's class certification requirements. *See id.*; *see also Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 859 (N.D. Ill. 2021); *Woodman's Food Mkt., Inc. v. Clorox Co.*, 833 F.3d 743, 750 (7th Cir. 2016) ("[T]he question of who is authorized to bring an action under a statute is one of statutory interpretation; it does not implicate Article III standing or jurisdiction.") (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)); *cf. Morrison v. YTB Intern, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("[A]pplication of choice-of-law principles has nothing to do with *standing*, though it may affect whether a class should be certified.").

This Court adopts the prevailing view: Tesla's challenge bears on Santiago's representative capacity under Rule 23, which is an issue to be decided at a later date. Here, Santiago undoubtedly meets Article III's standing requirements. He alleges a concrete injury in the form of economic loss; that injury is fairly traceable to Tesla's conduct; and the Court can redress the injury with money damages. *See Freeman*, 528 F. Supp. 3d at 859; *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015); 1 *McLaughlin on Class Actions* § 4:28 & n.25 (11th ed. 2014). Santiago does not need to show he can recover under other states' laws to state claims

on behalf of a nationwide class. That is because "[f]or everyone else in the proposed class, [Santiago] is proposing to serve as a *class representative*, not seeking to redress an injury specific to [him]." *Freeman*, 528 F. Supp. 3d at 859. Moreover, if Tesla's theory about how Article III standing applies to class complaints were true, that would mean that "no multi-state or nationwide class can ever be certified without a representative from each and every State in the proposed class." *Id.*

The Court therefore declines to dismiss Santiago's claims involving state laws outside Illinois based on a lack of Article III standing.

## B. Implied Warranty of Merchantability (Count II)

Tesla challenges Santiago's implied warranty of merchantability claim on, among other grounds, Santiago's failure to provide pre-suit notice of the alleged defect. The Court finds Tesla's position in this regard to have merit. It therefore does not address Tesla's two other attacks on Santiago's Count II claim (involving issues of merchantability and privity).

With respect to pre-suit notice, Section 2–607 of the Uniform Commercial Code ("UCC")—codified in Illinois at 810 ILCS 5/2–607(3)(a)—provides that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." This means that, under Illinois law, buyers "must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 492 (1996). The notice requirement is excused if (1) the seller already has actual knowledge of the product's defect, or (2) the consumer suffers

a personal injury (in which case the notice requirement may be satisfied by filing suit). *Id.* at 492, 494–95. "The purpose of the notice requirement is to encourage parties to resolve the dispute short of litigation." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015); *see also* 810 ILCS Ann. 5/2–607, cmt. 4 (notice requirement "opens the way for normal settlement through negotiation").

Santiago does not argue that he personally provided Tesla notice of the alleged defect. Instead, he insists that the notice requirement is excused because Tesla "knew of the issue that affected its Model 3 vehicles both through media publications, internal reporting, as well as through the numerous NHTSA complaints." [29] at 9. But the actual knowledge exception "is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product *purchased by a particular buyer*." *Connick*, 174 Ill. 2d at 494 (emphasis added). And Santiago's complaint does not allege that Tesla knew about *his* particular issue when he filed suit—it alleges only that Tesla was generally aware of the defect. Tesla's "generalized knowledge about the safety concerns of third parties" is not enough to meet the UCC's notice requirement. *Id.* at 493.

Accordingly, Santiago's Count II claim for breach of implied warranty of merchantability is dismissed with prejudice.

## C. ICFA (Count III)

Tesla next asks the Court to dismiss Santiago's ICFA claim. The ICFA provides a remedy for "unfair or deceptive acts or practices" in certain commercial transactions. 815 ILCS 505/2. "[U]nfair or deceptive acts or practices" include the use

of any "deception, fraud, false pretense, false promise, [or] misrepresentation." *Id.* To state a claim under the ICFA, a plaintiff must allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *see also Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 492 (1999) (citing *Connick*, 174 Ill.2d at 501). The statute permits claims based on "either deceptive conduct or unfair conduct (or both)." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

As with other varieties of fraud, ICFA claims based on deceptive conduct are subject to Rule 9(b)'s heightened pleading standard. *See Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). A plaintiff must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Tesla challenges Santiago's Count III ICFA claim on three grounds, each of which the Court addresses next.

### 1. Deceptive Conduct – Material Misrepresentation

Tesla contends that Santiago has not sufficiently alleged any specific misrepresentation the company made in advertising its vehicles to support a claim based on deceptive conduct. The Court agrees with Tesla.

Santiago relies on two alleged misrepresentations. First, he points to a Tesla website that contains the following statements about the Tesla Model 3: "Rear, side

and forward-facing cameras provide maximum visibility;" "Forward-facing radar provides a long-range view of distant objects;" "12 Ultrasonic Sensors"; and "Detects nearby cars, prevents potential collisions and assists with parking." [14] ¶ 11. According to Santiago, the statement that the Tesla Model 3 "prevents potential collisions" is false because its defective forward collision monitoring system actually *creates* potential collisions. [29] at 10.

Under the ICFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). The "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). Assessed under this standard, the Court is not convinced that the cited statements from Tesla's website were deceptive for purposes of the ICFA. Although Tesla's forward collision monitoring system might sometimes cause phantom braking, and although an occurrence of phantom braking might sometimes result in a collision, it does not follow that Tesla's system does not also "prevent potential collisions" when it is reacting to an actual forward threat. Santiago's complaint certainly does not allege that to be the case. In other words, that the forward collision monitoring system might sometimes cause collisions does not make Tesla's statement that it prevents collisions untrue. Nor did Tesla represent that its forward collision monitoring system prevents *all* collisions.

Santiago also points to statements on Tesla's website touting its vehicles as "some of the safest cars on the road" and "built for safety." [14] ¶ 10; [29] at 10. Tesla

argues these representations are "puffery" and cannot support a consumer fraud claim. [22] at 14; *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 846 (2005); *Pickens v. Mercedes-Benz USA, LLC*, No. 20 C 3470, 2021 WL 5050289, at *2, 4 (N.D. Ill. Nov. 1, 2021). The Court agrees with Tesla.

"[G]eneral statements about big-picture concepts such as trust, security, reputation, and safety are non-actionable puffery." *Costa v. FCA US LLC*, 542 F. Supp. 3d 83, 101 (D. Mass. 2021); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 750 (E.D. Mich. 2017) ("[T]o the extent Beck is claiming that he relied on any FCA's representations regarding their vehicles' general safety, quality, reliability, or performance, those assertions undoubtedly constitute non-actionable puffery."). Tesla's general statements regarding safety are so vague that their "truth or falsity … cannot be precisely determined." *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 73 (2007). Moreover, because the statements are so vague, "no reasonable consumer would rely on … [them] as the sole basis for making a purchase." *Id.* at 74.

Santiago argues otherwise, writing that Tesla's safety-oriented language cannot constitute puffery where it "is based on 'objectively verifiable terms.'" [29] at 10 (citing *Bietsch v. Sergeant's Pet Care Prod., Inc.*, No. 15 C 5432, 2016 WL 1011512, at *4 (N.D. Ill. Mar. 15, 2016)). In *Bietsch*, however, the consumer-product packaging at issue specifically referenced the relevant, objective metrics; it communicated to consumers that the pet food inside contained "essential nutrients … in accordance with the 'AAFCO Dog Food Nutrient Profiles.'" *Id.* As *Bietsch* explained: "The reference to these recognized standards suggests that Sergeant's nutrition claims are

tested and verifiable, essentially placing a seal of approval on Sergeant's claims." *Id.*
Here, even accepting that NHTSA safety ratings and mandatory government tests
provided definitive, objective criteria by which vehicle safety can be measured, *see*
[29] at 10–11, the statements on Tesla's website to which Santiago points did not
reference them. For this reason as well, Tesla's statements fall on the puffery side of
the line, not actionable deceptive representations.

### 2. Deceptive Conduct – Material Omissions

Tesla argues Santiago cannot bring an omission-based deceptive conduct claim
because he has not adequately pled Tesla had pre-purchase knowledge of the alleged
defect and because Santiago has not pled with particularity that Tesla omitted
material information from a specific communication. Here, Santiago has met his
burden.

When bringing a claim based on an omission of a material fact, a plaintiff must
allege "that the fact omitted or concealed was known to the defendant at the time of
the concealment." *Ibarolla v. Nutrex Rsch., Inc.*, No. 12 C 4848, 2013 WL 672508, at
*3 (N.D. Ill. Feb. 25, 2013) (quoting *Addison v. Distinctive Homes, Ltd.*, 359 Ill.App.3d
997, 1001 (1st Dist. 2005)); *see also Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12 C
9873, 2013 WL 2151551, at *5 (N.D. Ill. May 16, 2013) ("One cannot engage in a
deceptive practice when one lacks knowledge regarding the issue in question."). 
Knowledge "may be alleged generally" under Rule 9(b). Fed. R. Civ. P. 9(b); *see also
Coss v. Playtex Prod.*, No. 08 C 50222, 2009 WL 2245657, at *5 (N.D. Ill. July 10,
2009). However, that knowledge "may be alleged generally" does not give a plaintiff

"license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*,
556 U.S. at 686–87. Given this backdrop, the Court will accept "general allegations
of knowledge insofar as they are consistent with reasonable inferences we can draw
from the facts in the complaint." *Ibarolla*, 2013 WL 672508, at *3.

The Court is satisfied that Santiago has sufficiently alleged Tesla's knowledge
of the pertinent defect. At least twice in his complaint, Santiago contends that Tesla
generally knew about the alleged defects in February 2021, when Santiago purchased
his vehicle. *See* [14] ¶ 18 ("Defendant has been consistently notified of the False
Collision Warning Defect since the release of its Tesla vehicles with auto-driving and
cruise control features."); *id.* ¶¶ 67, 80 ("Defendant has had extensive knowledge and
awareness that its Tesla Vehicles have the False Collision Warning Defect."). And
Santiago supports these allegations with two sources: (1) a May 2023 whistleblower
article suggesting that Tesla had received hundreds of reports of phantom braking,
*id.* ¶ 14; and (2) 10 consumer reports made to the NHTSA between February 2021
and February 2023, *id.* ¶ 15. In each report, the Tesla user complains they
experienced sudden phantom braking when there was no hazard on the road. *Id.*

The Court sets aside the 10 NHTSA complaints. As Tesla points out, nine of
the 10 complaints were made after Santiago purchased his car. [22] at 14. The tenth
complaint was made on February 3, 2021, which may have been before Santiago's
purchase. (The complaint does not pinpoint the exact purchase date, stating only that
Santiago bought his car sometime in February 2021. *Id.* ¶ 26.) Even if the Court
assumed that the tenth complaint was made before Santiago bought his Tesla,

Santiago cannot plausibly allege that Tesla knew about the defect based on a single complaint made, at most, only days or a handful of weeks before his purchase.

But that still leaves the whistleblower article, which states that Tesla began receiving complaints about the defect starting as early as 2015 and which is consistent with Santiago's allegation that Tesla has been notified of the defect since the original release of the features at issue.[1] When viewed in the light most favorable to Santiago, the complaint's general allegations of knowledge combined with the whistleblower report permit the reasonable inference that Tesla knew about the alleged defects when Santiago purchased his car in February 2021. *See Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 916 (N.D. Ill. 2013) (plaintiffs sufficiently alleged knowledge based on complaints posted on the internet); *cf. Herman & MacLean v. Huddleston*, 459 U.S. 375, 391 (1983) ("[P]roof of scienter required in fraud cases is often a matter of inference from circumstantial evidence.").[2]

---

[1] *See* Erin Marquis, *Whistleblower Drops 100 Gigabytes of Tesla Secrets To German News Site: Report*, JALOPNIK (May 25, 2023), https://jalopnik.com/whistleblower-drops-100-gigabytes-of-tesla-secrets-to-g-1850476542. The Court takes judicial notice of the report as a document Santiago incorporated into his complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference."); *see also* 5B Wright & Miller § 1357 (4th ed.) (2024).

[2] Tesla cites to *Sherwin v. Samsung Electronics America, Inc.*, No. 16 C 7535, 2018 WL 11216896 (N.D. Ill. Mar. 2, 2018), to support its contention that Santiago has not sufficiently pled Tesla's knowledge of the defect. The plaintiff in *Sherwin* referenced a "handful" of consumer complaints, and, like here, only one predated plaintiff's initial purchase. *Id.* at *5. But in *Sherwin*, the one complaint that predated plaintiff's purchase was anonymously posted to a chat room and addressed a completely different defect than the one plaintiff alleged in her complaint. *See id.* Here, the one complaint that likely predated Santiago's purchase was posted to the NHTSA's website and related to the exact same defect upon which his claims are based. And, more importantly, Santiago supplements that NHTSA complaint with a whistleblower article which says that Tesla began receiving complaints about the defect as early as 2015. In contrast to the complaint in *Sherwin*, Santiago's allegations much

15

Tesla argues, in the alternative, that even if Santiago adequately pled knowledge, his omission-based claim should still fail because he has not pled with particularity that Tesla omitted material information from a specific communication. [22] at 15. "An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud." *Connick*, 174 Ill.2d at 504 (citing 815 ILCS 505/2). "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Id.* at 505. A "consumer cannot maintain an action under the [ICFA] when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant." *De Bouse v. Bayer*, 235 Ill. 2d 544, 555 (2009). For this reason, some courts have dismissed ICFA claims of omission when a plaintiff has not "connected the dots between the purported omission and a particular communication" upon which the plaintiff relied. *Fleury v. Gen. Motors LLC*, 654 F. Supp. 3d 724, 732 (N.D. Ill. 2023); *see also O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020) (dismissing omission-based ICFA claim because plaintiff did "not identify any particular direct statements from Defendant that contain material omissions").

Here, Santiago successfully connects the dots. He points to the same Tesla webpage, already discussed, in which Tesla represented that its sensor system "[d]etects nearby cars, prevents potential collisions and assists with parking." [14] ¶ 11; [29] at 13. The Court sees no reason why it cannot treat the language on Tesla's

---

more plausibly suggest that Tesla was aware of the defect by the time Santiago purchased his car.

webpage as a specific communication, and Tesla does not offer one. *See* [22] at 15 (arguing only that "[w]hile Santiago may claim that Tesla failed to disclose the defect in its online advertisements, that assertion fails because Santiago cannot 'connect[] the dots between the purported omission and a particular communication by [Tesla] which he relied on'") (second alteration in original). Critically from Santiago's perspective, the webpage contains no warning that the car sometimes alerts unnecessarily or automatically brakes when there is no real risk of forward collision.

In addition, Santiago squarely alleges that he relied on this webpage when deciding to purchase his Tesla. He maintains that he "reviewed Defendant's website page for its Model 3 at the time that he purchased it, including the section explaining that the vehicle came with forward facing cameras and sensors to detect objects in its path." *Id.* ¶ 30. Moreover, Santiago alleges that the "safety features that Defendant had advertised as to its Model 3, including specifically its collision avoidance technology, were major factors in [his] decision to purchase his Model 3." *Id.* Finally, Santiago contends that he would not have purchased the Tesla Model 3 (or else would have paid significantly less for it) had he known about the defect. *Id.*; *see also Connick*, 174 Ill.2d at 505 (finding plaintiffs adequately pled an ICFA violation based on a material omission where plaintiffs "alleged that Suzuki was aware of the Samurai's safety problems," that "Suzuki failed to disclose these defects," and that "they would not have purchased the vehicles if Suzuki had disclosed the Samurai's safety risk").

Viewing these facts in the light most favorable to Santiago, the Court concludes that the complaint plausibly states an omission-based ICFA claim.

### 3. Unfair Conduct

Finally, Tesla argues that Santiago cannot proceed with his ICFA unfair-conduct claim because it is duplicative of his ICFA deceptive-conduct claim.

"An unfair practice claim hinges upon a defendant's allegedly 'unfair or unscrupulous' behavior rather than deceptive behavior." *Quitno v. Gen. Motors, LLC*, No. 1:18-CV-07598, 2020 WL 777273, at *4 (N.D. Ill. Feb. 18, 2020) (quoting *Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 WL 7190809, at *3 (N.D. Ill. Dec. 17, 2014)). Illinois follows the so-called *Sperry* test to determine whether particular conduct is unfair. *See Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014) (citing *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)); *see also Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). The *Sperry* factors consider whether the practice "(1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers." *Batson*, 746 F.3d at 830. "All three criteria do not need to be satisfied to support a finding of unfairness," and a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 201 Ill. 2d at 418 (quoting *Cheshire Mortg. Serv., Inc. v. Montes*, 223 Conn. 80, 106 (1992)).

Unlike a deceptive-practices claim, an unfair practices claim is not subject to Rule 9(b)'s heightened pleading requirements. *See Pirelli Armstrong Tire Corp.*

18

*Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). However, a plaintiff cannot "use the 'unfair practices' prong of the ICFA to avoid meeting Rule 9(b)'s particularity requirements if the claim remains 'entirely grounded' in a fraud claim." *Quitno*, 2020 WL 777273, at *4 (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)); *see also Pirelli*, 631 F.3d at 446.

Santiago argues that his false advertising allegations support his unfair practices claim, but the Court disagrees. As other courts in this district have explained, an "unfair practice claim hinges upon a defendant's allegedly 'unfair or unscrupulous' behavior rather than deceptive behavior." *Quitno*, 2020 WL 777273, at *4 (citing *Stavropoulos*, 2014 WL 7190809, at *3). Santiago sometimes describes Tesla's false representations and omissions as "deceptive *and unfair*." [14] ¶¶ 88, 90 (emphasis added). But his choice of adjectives notwithstanding, at their core, Santiago's false advertising allegations remain "entirely grounded" in his claim that Tesla engaged in deceptive practices. Santiago cannot convert his fraud claim by "[s]imply adding language of 'unfairness.'" *See Camasta*, 761 F.3d at 737. The Court therefore declines to analyze Santiago's allegations of false advertising by Tesla under the lower pleading threshold for an unfair act. *See Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12 C 9873, 2013 WL 2151551, at *2 (N.D. Ill. May 16, 2013) ("[U]nder Illinois law, concealment cases … are evaluated under the deception prong of the ICFA.").[3]

---

[3] Santiago cites one district court case which concluded—based on the Seventh Circuit's decision in *Benson*—that "[f]alse advertising alone is an unfair practice under the ICFA." *Bonahoom v. Staples, Inc.*, No. 20-CV-1942, 2021 WL 1020986, at *5 (N.D. Ill. Mar. 17, 2021) (citing *Benson*, 944 F.3d at 647). In *Benson*, the Seventh Circuit held that plaintiff plausibly

Santiago offers a second basis for his unfair practices claim: that Tesla is overcharging him for his car insurance premiums. According to Santiago, this is because Tesla records the false collision warnings as unsafe driving events, then it calculates his "Safety Score"—a measure of his driving habits that factors into his insurance premiums—with these unsafe driving events baked in. [14] ¶ 34. The problem for Santiago is that, as currently plead, his allegations regarding Tesla's insurance premiums fail to satisfy the *Sperry* test.

As to the first *Sperry* factor, Santiago argues that "charging inflated insurance premiums based on a vehicle defect of [Tesla's] own creation plainly meets the requirements for pleading an unfair act that 'offends public policy.'" [29] at 12. Although Santiago makes this argument in a conclusory fashion, the Court is hard-pressed to come up with a countervailing position. Assuming the truth of Santiago's allegations, it is difficult, if not impossible, to conceive of a sound public policy for permitting insurers to overcharge consumers for unfounded reasons.

With respect to the second *Sperry* factor, Santiago makes no effort—either in his complaint or in his response to Tesla's motion—to articulate how Tesla's practice "may be considered immoral, unethical, oppressive, or unscrupulous" or whether "it imposes a lack of meaningful choice or an unreasonable burden on the consumer." *See*

---

stated an unfair act by misrepresenting the amount of chocolate in a chocolate box, a practice the plaintiff had referred to as "false advertising." 944 F.3d at 647. Although the Court recognizes some ambiguity between *Camasta* and *Benson*, it finds *Camasta*'s reasoning to be directly on point here, where Santiago bases his deceptive practice and unfair practice claims on identical conduct. In addition, as Tesla points out, *see* [32] at 11, the complaint in *Bonahoom* involved "numerous detailed factual allegations of false advertising," which is not the case here. 2021 WL 1020986, at *5.

*Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 616 (N.D. Ill. 2009) (quoting *W. Ry. Devices Corp. v. Lusida Rubber Prods., Inc.*, No. 06 C 0052, 2006 WL 1697119, at *5 (N.D. Ill. June 13, 2006)). In his response to Tesla's motion, Santiago does not even mention the second *Sperry* factor when arguing that Tesla's allegedly inflated insurance premiums establish a valid unfair-practices claim. *See* [29] at 13. His complaint is similarly hollow. Although he refers to Tesla's insurance-premium practice as "malicious," *see* [14] ¶ 23, he does not flesh out that characterization with any detail. Did Tesla's practice deprive Santiago of a meaningful choice or impose an unreasonable burden on him by, for example, locking him into a contractual arrangement he could not exit even after learning of Tesla's charging practices? Santiago does not say. When considering a Rule 12(b)(6) motion to dismiss, the Court "must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). The Court, however, "need not accept as true statements of law or unsupported conclusory factual allegations." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021). *See also Twombly*, 550 U.S. at 555 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Instead, "the factual allegations must be enough to raise a right to relief above the speculative level." *Id.* On this point, Santiago has provided only conclusory allegations to date.

For similar reasons, the Court is reluctant to weigh the third *Sperry* factor in Santiago's favor. "A practice causes substantial injury to consumers if it causes significant harm to the plaintiff and has the potential to cause injury to a large

number of consumers." *Stonecrafters*, 633 F. Supp. 2d at 617 (quoting *Wilson v. Harris N.A.*, No. 06 C 5840, 2007 WL 2608521, at *8 (N.D. Ill. Sept. 4, 2007)). Although Santiago has clearly alleged an injury, he has alleged no facts regarding its significance, despite that information being in his possession. For instance, his complaint includes no allegations about just how much his insurance premiums increased. Nor does Santiago shed any light on when those increases occurred relative to the "phantom braking" incidents he experienced. On this barebones complaint, the Court is reluctant to conclude that Santiago has experienced a "significant" enough injury to plausibly state an unfair act.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Tesla's motion to dismiss. [22]. Count I and Santiago's claim for injunctive relief are dismissed without prejudice based on Santiago's representation in his response brief that he no longer wishes to pursue these claims. [29] at 2 n.2. Count II is dismissed with prejudice for lack of notice. Count III may proceed in its current iteration, but only to the extent Santiago alleges an omission-based deceptive practice.

The Court grants Santiago leave to file a second amended complaint on or before 12/13/24 if he can cure the deficiencies with his unfair-practice ICFA claim, as it relates to the insurance premiums, while still complying with his obligations under Federal Rule of Civil Procedure 11. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise

unwarranted, the district court should grant leave to amend after granting a motion to dismiss."). The parties are directed to appear for a status hearing on 1/7/25 at 9:30 a.m. to discuss next steps in the case.

Georgia N. Alexakis
United States District Judge

Date: 11/22/24