## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA SANTIAGO, individually and on behalf of others similarly situated, | ) ) ) | Case No. 23 CV 2891 |
| | ) | Hon. Georgia N. Alexakis |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TESLA, INC. a Delaware Corporation, | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT TESLA, INC.'S MOTION TO DISMISS COUNT II OF PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT

NOW COMES Defendant Tesla, Inc. ("Tesla"), through its undersigned counsel, and in accordance with Federal Rules of Civil Procedure 9(b) and 12(b)(6), hereby moves to dismiss Count II of the Second Amended Class Action Complaint ("SAC") filed by Plaintiff Joshua Santiago, ECF No. 48. As grounds for its motion, Tesla submits the accompanying brief.

Pursuant to this Court's case procedures, the parties met and conferred regarding a briefing schedule. Pursuant to this Court's order at the January 14, 2025, status hearing (Dkt. No. 52), Plaintiff's response is due on February 13, 2025, and Tesla's reply is due on March 6, 2025. The parties agree that Tesla's Answer to the SAC shall be due 21 days after the Court issues its decision on this Motion.

Dated: January 14th, 2025

*/s/ Susan M. Clare*
Livia M. Kiser
KING & SPALDING LLP
110 N. Wacker Dr., Ste. 3800
Chicago, IL 60606
T: (312) 995-6333
lkiser@kslaw.com

Susan M. Clare
J. Franklin Sacha, Jr.
KING & SPALDING LLP
1180 Peachtree St. NE, Ste. 1600
Atlanta, GA 30309
T: (404) 572-4600
sclare@kslaw.com
fsacha@kslaw.com

*Attorneys for Defendant Tesla, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSHUA SANTIAGO, individually and on behalf of others similarly situated, | ) | Case No. 23 CV 2891 |
| | ) | |
| | ) | Hon. Georgia N. Alexakis |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TESLA, INC. a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT TESLA, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS COUNT II OF
<u>PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION...................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................. 2

LEGAL STANDARD ................................................................................................ 4

ARGUMENT ............................................................................................................ 5

I.  Plaintiff Lacks Standing to Pursue an Unfair Practices Claim Related to His Policy with TIS, Which Is Separate from Manufacturer/Defendant Tesla, Inc. ........................... 5

II. Plaintiff Fails to State a Standalone "Unfair Practices" Claim Under the ICFA................ 7

    A.  Plaintiff Improperly Attempts to Shoehorn "Deceptive" Conduct Allegations into His ICFA "Unfair Practices" Claim. ............................. 8

    B.  Plaintiff Fails to Satisfy the *Sperry* Test. ............................................... 8

        1.  Plaintiff has not pleaded immoral, unethical, oppressive, or unscrupulous conduct................................................................. 9

        2.  Plaintiff has not sufficiently alleged a substantial injury to consumers. ............................................................................... 11

        3.  Plaintiff has not alleged that Defendant's alleged practice offends public policy............................................................................. 13

III. This Court Should Stay Count II Due to the Parallel California Action. ....................... 14

CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................5

*Avila v. JDD Inv. Co.*,
  No. 21 C 1917, 2021 WL 5905627 (N.D. Ill. Dec. 13, 2021) .................................15

*Batson v. Live Nation Ent., Inc.*,
  746 F.3d 827 (7th Cir. 2014) ...........................................................................9, 13

*Beckman v. Chi. Bear Football Club, Inc.*,
  No. 17 C 4551, 2018 WL 1561719 (N.D. Ill. Mar. 30, 2018) ................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................5, 7, 11, 14

*California v. Texas*,
  593 U.S. 659 (2021)...................................................................................5, 6

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ..............................................................................8

*Cattie v. Wal-Mart Stores, Inc.*,
  504 F. Supp. 2d 939 (S.D. Cal. 2007)....................................................................6

*Cohen v. Am. Sec. Ins. Co.*,
  735 F.3d 601 (7th Cir. 2013) .........................................................................10, 14

*Colorado River Water Conservation District v. United States*,
  424 U.S. 800 (1976)...................................................................................15

*DeMonte v. Apple Inc.*,
  No. 23 C 1133, 2024 WL 4119141 (N.D. Ill. Sept. 9, 2024)................................13

*DH2, Inc. v. SEC*,
  422 F.3d 591 (7th Cir. 2005) ...........................................................................6

*Fleury v. Gen. Motors LLC*,
  654 F. Supp. 3d 724 (N.D. Ill. 2023) ..............................................................7, 10

*Geinosky v. City of Chicago*,
  675 F.3d 743 ...........................................................................................4

*Greenberger v. GEICO Gen. Ins. Co.*,
    631 F.3d 392 (7th Cir. 2011) ...................................................................................7

*Leszanczuk v. Carrington Mortg. Servs., LLC*,
    21 F.4th 933 (7th Cir. 2021) ................................................................................13

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...............................................................................................5

*Parungao v. Cmty. Health Sys., Inc.*,
    858 F.3d 452 (7th Cir. 2017) .................................................................................1

*Quitno v. Gen. Motors, LLC*,
    No. 1:18-CV-07598, 2020 WL 777273 (N.D. Ill. Feb. 18, 2020) ...........................7

*Robinson v. Toyota Motor Credit Corp.*,
    775 N.E.2d 951 (Ill. 2002) ...................................................................................14

*Stephens v. Tesla Ins. Servs., Inc.*,
    No. 23CV031800 (Cal. Super. Ct., Alameda Cnty.)..............................................1

*Stinson v. LCS Cmty. Emp. LLC*,
    No. 20 CV 04603, 2021 WL 4978450 (N.D. Ill. May 3, 2021)............................15

*Stonecrafters, Inc. v. FoxFire Printing & Packaging, Inc.*,
    633 F. Supp. 2d 610 (N.D. Ill. 2009) ................................................................9, 11

*Toulon v. Continental Cas. Co.*,
    877 F.3d 725 (7th Cir. 2017) ...............................................................................10

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017)............................................................................................4, 5

*In re VTech Data Breach Litig.*,
    No. 15 CV 10889, 2018 WL 1863953 (N.D. Ill. Apr. 18, 2018)..........................7, 8

*Wigod v. PNC Bank, N.A.*,
    338 F. Supp. 3d 758 (N.D. Ill. 2018) ...................................................................14

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) .................................................................................7

*Yeftich v. Navistar, Inc.*,
    722 F.3d 911 (7th Cir. 2013) .............................................................................5, 13

## INTRODUCTION

After obtaining leave to amend his complaint to state a claim for unfair practices under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") based on allegedly inflated insurance premiums, Plaintiff filed a Second Amended Class Action Complaint ("SAC") that adds a Tesla Insurance Subclass, a new ICFA claim (Count II), and a handful of new allegations. The few new allegations focus on the purported relationship between the alleged defect (false collision warnings), the "Safety Score" used to calculate premiums (which factors in collision warnings), and the insurance premiums Plaintiff paid based on two months' worth of Safety Scores. SAC ¶¶ 31–34. The SAC is otherwise nearly identical to the First Amended Complaint ("FAC"), and there are no other substantive allegations to support his new ICFA unfair practices claim despite the Court's guidance about the types of facts that could support this claim.

As explained below, Plaintiff's attempt to resuscitate his defective "unfair practices" claim fails. For starters, Plaintiff lacks standing to sue Defendant Tesla, Inc. ("Tesla") concerning his insurance policy since it neither issued nor administers the policy; rather, a separate company (Tesla Insurance Services, Inc. or "TIS") is responsible for his policy.[1] But even if the purported insurance-related conduct were fairly traceable to Tesla, Inc., Plaintiff has failed to cure the myriad flaws this Court previously identified. For instance, Plaintiff does not—and cannot—allege that he was "locked into" his TIS policy such that he had no meaningful choice but to accept its terms.

---

[1] In April 2023, roughly a month after this case was filed (but long before Plaintiff asserted a standalone unfair practices claim in this case), Plaintiff's counsel filed a class action in California state court against TIS alleging substantially identical allegations as those at issue here, *i.e.*, that TIS "charg[es] inflated premium fees based on false Forward Collision Warning signals." *Stephens v. Tesla Ins. Servs., Inc.*, No. 23CV031800 (Cal. Super. Ct., Alameda Cnty.), Third Am. Compl. at 1 (attached hereto as Ex. 1). That action also seeks to certify an overlapping Illinois subclass asserting a claim for alleged ICFA violations. *See id.* ¶ 42; *see also Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) ("Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned." (citations omitted)).

Nor has Plaintiff plausibly pled that the purported insurance practices have caused "substantial injury to consumers." Indeed, he hinges his "inflated premium" theory entirely on a cherry-picked two-month comparison, despite having been enrolled in an insurance policy with TIS for approximately 46 months. And even that two-month sample comes nowhere close to showing that his assigned Safety Score was solely (or even materially) attributable to the purported false collision warnings he claims he experienced, especially since his Safety Score is comprised of seven other factors that he conspicuously fails to mention, let alone control for or plead any facts about. Finally, this Court should abstain from hearing this claim in favor of a California action against TIS, which is also a putative class action involving an Illinois plaintiff asserting statutory unfair conduct claims based on the same allegations in this case—that the purported false collision warning defect causes inflated TIS insurance premiums. In sum, Plaintiff's amended allegations remain wholly speculative and, thus, once again fail to pass muster under both Rule 8 and 9(b).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff asserts that certain Tesla vehicles suffer from a purported "False Collision Warning Defect" that causes the forward collision monitoring system to alert when there is no risk of collision. SAC ¶ 1. He alleged in his previous complaint that Tesla was not only aware of this purported defect and failed to disclose it but also that he was enrolled in "Tesla Insurance, including a usage-based safety discount program which determines the policyholder's premium based on certain driving metrics, including the frequency of safety alerts." FAC ¶ 33. His ICFA consumer protection claim focused on Tesla's purported failure to disclose the underlying collision warning defect and alleged that he suffered damages as a result of that "unfair and deceptive" conduct, including in the form of increased insurance premiums. *Id.* ¶¶ 88–90.

The Court held that Plaintiff adequately pleaded a deceptive conduct claim under the ICFA based on Tesla's purported failure to disclose the alleged collision warning defect. Order at 13–17, ECF No. 44. The Court then addressed whether Plaintiff could assert a separate, standalone claim for *unfair* conduct under the ICFA based solely on his allegations related to his increased insurance premiums. *Id.* at 20. After ruling that any such unfair practices claim could not be based on the allegations of deceptive conduct, the Court evaluated whether the previous complaint's allegations with respect to his insurance premiums pleaded a standalone unfair practices claim. *Id.* at 19–20. The Court explained that the "barebones" and "conclusory" allegations did not adequately plead a claim under Rule 8 but allowed Plaintiff to replead an "unfair-practice ICFA claim, as it relates to the insurance premiums" and provided a roadmap under Illinois law for doing so: (1) pleading facts showing that purportedly overcharging consumers for "unfounded reasons" violates public policy, (2) adequately alleging that such practices are "immoral, unethical, oppressive, or unscrupulous" or whether they "impose[ ] a lack of meaningful choice or an unreasonable burden on the consumer" (such as by locking Plaintiff into an insurance contract), and (3) adequately showing that such practices caused "significant harm" to Plaintiff and could potentially injure a large number of consumers. *Id.* at 20–22. The Court granted Plaintiff leave to amend the previous complaint to correct these deficiencies subject to Rule 11.

In the SAC, Plaintiff added four factual allegations relating to his Safety Score and insurance premiums in response to the Court's order:

- Plaintiff's premiums are calculated based on a formula that factors Forward Collision Warnings per 1,000 Non-Autopilot Miles into his Safety Score, which "directly correlate[s] to his premium," with the Safety Score at the end of the month determining the next month's premium. Redline of SAC (ECF No. 50)

¶ 31.  This allegation relies on a webpage that explains the role of the Safety Score for TIS premiums.[2]

- "[I]nformation about the exact number of false collision warnings is in Defendant's sole custody and control," but Plaintiff's "premiums have consistently increased due to false collision warnings he experienced."  Id. ¶ 32.

- Plaintiff "recalls that he experienced false collision warnings in the months that his Safety Score decreased and his premiums increased."  Id. ¶ 33.

- In August 2024, Plaintiff was assigned a Safety Score of 67 "because of false collision warnings" and paid $319.45 in premiums.  Id. ¶ 34.  In October 2024, "when he did not experience any false collision warnings," his Safety Score was 85, and his premium was $175.70.  Id.

In addition to those four new factual allegations, Plaintiff added a new "Tesla Insurance Subclass" (consisting of individuals who purchased certain Tesla vehicles and enrolled in TIS) and a separate "unfair practices" claim for the Tesla Insurance Subclass based on his allegations related to his insurance premiums.  *Id.* ¶¶ 36, 53–61.  He alleges that these new allegations support his unfair practices claim and sufficiently demonstrate that Tesla's practice offends public policy, unscrupulously imposes a lack of choice, and causes significant injury.

## LEGAL STANDARD

Plaintiff must have Article III standing for each claim he brings.  *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).  To survive a motion to dismiss, a complaint "must provide more than labels and conclusions" or a "formulaic recitation of the elements of a cause of

---

[2] The website pages to which Plaintiff cites should be considered in this Motion because "[a] motion under Rule 12(b)(6) can be based . . . on the complaint itself" and "documents that are critical to the complaint *and referred to in it.*"  *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (emphasis added) (citations omitted).

action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Although courts must assume the truth of all material facts alleged, they do not assume the truth of "statements of law or unsupported conclusory factual allegations." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

## ARGUMENT

### I.   Plaintiff Lacks Standing to Pursue an Unfair Practices Claim Related to His Policy with TIS, Which Is Separate from Manufacturer/Defendant Tesla, Inc.

Plaintiff's previous complaint claimed that he incurred damages by paying inflated insurance premiums due to the purported forward-collision warning defect in his Tesla vehicle. *See* FAC ¶¶ 3, 23–25, 33–35, 90. But he now alleges a separate claim on behalf of a new Tesla Insurance Subclass focused on those allegedly inflated premiums. SAC ¶¶ 53–61. This new, standalone claim fails for lack of Article III standing with respect to Defendant Tesla, Inc. because the purported injury (inflated insurance premiums) is not properly traceable to Tesla, Inc.

Plaintiff must have Article III standing "for each claim he seeks to press and for each form of relief that is sought." *Town of Chester*, 581 U.S. at 439 (quotation omitted). To have standing, he must allege that (1) he suffered an injury in fact, (2) there is a causal relationship between the injury and the conduct complained of, and (3) it is likely—as opposed to speculative—that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Causation requires the plaintiff to allege an injury "fairly traceable" to the defendant such that the injury is "not the result of the independent action of some third party not before the court." *Id.* at 560 (cleaned up); *see also California v. Texas*, 593 U.S. 659, 668–69 (2021) (same).

Even if Plaintiff can show that he incurred inflated premiums, any such injury is not fairly traceable to Tesla, Inc., which manufactured his vehicle but does not charge premiums or otherwise

administer car insurance. That conduct is conduct of TIS, a separate subsidiary responsible for the insurance program.[3] Manufacturer Tesla, Inc. is a different company, which means Plaintiff cannot fairly trace his unfair practices injury back to Tesla, Inc. *See California*, 593 U.S. at 675 ("[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party . . . standing is not precluded, but it is ordinarily substantially more difficult to establish." (cleaned up)); SAC ¶ 31 n.10 (linking to description of Safety Scores calculations—without attributing formula to Defendant). Plaintiff's counsel knows this already, as he is also suing TIS in a duplicative California state court class action. *See supra* n.1.

The Seventh Circuit has explained that traceability is lacking where the alleged injury "hinges on the decisions of independent actors" who have their own discretion. *DH2, Inc. v. SEC*, 422 F.3d 591, 597 (7th Cir. 2005); *see also Beckman v. Chi. Bear Football Club, Inc.*, No. 17 C 4551, 2018 WL 1561719, at *1–2 (N.D. Ill. Mar. 30, 2018) (ruling that plaintiff failed to allege redressability under Article III where he did not plead facts showing that the challenged policy was "causally connected" to the defendant—for instance, that the defendant played a role in enforcing the challenged policy); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) (finding that plaintiff did not "adequately show[] her injury [was] traceable to the actions of Wal-Mart Stores" because the allegations were "insufficient to show that Wal-Mart Stores was involved in the alleged wrongdoing" or "even direct[ed] the type of activity [p]laintiff complain[ed] of"). These cases confirm that Plaintiff's alleged insurance premium injury is not fairly traceable to manufacturer Tesla, Inc., which does not administer the insurance program at issue here.

---

[3] *See* Tesla, Inc., Annual Report (Form 10-K) (Jan. 26, 2024), Exhibit 21.1 (identifying TIS as a California-incorporated subsidiary of Tesla, Inc.), *available at* https://www.sec.gov/Archives/edgar/data/1318605/000095017023001409/tsla-ex21_1.htm (last accessed Jan. 14, 2025).

Plaintiff cannot overcome this threshold standing flaw for his unfair practices claim by claiming that the allegedly inflated insurance premiums are fairly traceable to Tesla, Inc. because those overpayments stem from the purported false collision warning defect. Any such argument would mean that the gravamen of his unfair practices claim is the same allegedly deceptive conduct (failing to disclose the purported defect) that is the basis of his ICFA deceptive practices claim in Count I. As this Court recognized, an unfair practices claim cannot hinge on deceptive conduct, especially when that deceptive conduct is already used to support another ICFA claim. Order at 19; *see also, e.g.*, *In re VTech Data Breach Litig.*, No. 15 CV 10889, 2018 WL 1863953, at \*7 (N.D. Ill. Apr. 18, 2018) ("[P]laintiffs cannot rely on the same conduct to establish separate unfair and deceptive theories under the ICFA."); *Quitno v. Gen. Motors, LLC*, No. 1:18-CV-07598, 2020 WL 777273, at \*4 (N.D. Ill. Feb. 18, 2020) ("An unfair practice claim hinges upon a defendant's allegedly 'unfair or unscrupulous' behavior rather than deceptive behavior."). Plaintiff cannot fall back on Count I to overcome this threshold standing flaw with respect to Count II, which means that this new claim should be dismissed for lack of subject matter jurisdiction.

**II.    Plaintiff Fails to State a Standalone "Unfair Practices" Claim Under the ICFA.**

Even if Plaintiff had standing to sue Defendant Tesla, Inc., Count II should be dismissed for failure to state a claim. *See Twombly*, 550 U.S. at 555. To successfully state a claim under the ICFA, Plaintiff must allege "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). Where unfair practice claims depend on omissions or misrepresentations, they sound in fraud and are subject to Rule 9(b)'s heightened pleading standard. *See Fleury v. Gen. Motors LLC*, 654 F. Supp. 3d 724, 731–33 (N.D. Ill. 2023); *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).

### A.   Plaintiff Improperly Attempts to Shoehorn "Deceptive" Conduct Allegations into His ICFA "Unfair Practices" Claim.

In Count II, Plaintiff alleges that "[i]n addition to being *deceptive*, Defendant's conduct *also constitutes an 'unfair practice'* under the ICFA" because he had to pay purportedly inflated insurance premiums. SAC ¶ 54 (emphasis added). But while Plaintiff brings a separate unfair practices claim, some of the new allegations he relies on in the SAC still sound in fraud. *Id.* ¶¶ 57– 60. For instance, he alleges that "Defendant's conduct of actively advertising its Tesla Insurance product on the same website as where it advertised the collision warning features of its Tesla Vehicles while *omitting any facts about the False Collision Warning Defect* . . . was unscrupulous and unethical." *Id.* ¶ 59 (emphasis added); *see also id.* ¶¶ 57, 60 (similarly alleging that Tesla advertised its insurance product and sold vehicles to the Tesla Insurance Subclass despite knowing of the purported defect and its impact on premiums). Those are the same type of omission-based allegations that the Court found sufficient to support Plaintiff's *deceptive* practices ICFA claim. Order at 13–18. As explained above, they cannot support a separate ICFA unfair practices claim (and would be subject to Rule 9(b) if they could be so used), since doing so would allow Plaintiff to bootstrap his omission-based deceptive-practices allegations onto his unfair-practices claim. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (noting that "[s]imply adding language of 'unfairness'" does not convert a fraud claim into an unfairness claim); *In re VTech Data Breach Litig.*, 2018 WL 1863953, at *7 (same conduct cannot support both deceptive and unfair ICFA claims). The Court should refuse to rely on any such "new" allegations that recycle the omission-based deceptive conduct claims this Court already addressed.

### B.   Plaintiff Fails to Satisfy the *Sperry* Test.

Focusing on the handful of new allegations in the SAC related to Plaintiff's purported overpayment of TIS premiums, *see* SAC ¶¶ 31–34, establishes that he has failed to plead a

plausible unfair practices claim. The Court provided clear guidance for how he could do so based on the *Sperry* test, which considers whether the conduct in question "(1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers." *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014). A practice can be unfair because of the degree to which it meets one of those factors or because it meets all three factors to a lesser degree. *Id.* As explained below—and despite the Court's direction on how to properly state such a claim—Plaintiff's new allegations fall short of Rule 8's requirement that he plausibly show that he paid inflated premiums as a result of the purported false collision defect.

> 1. *Plaintiff has not pleaded immoral, unethical, oppressive, or unscrupulous conduct.*

To establish "immoral, unethical, oppressive, or unscrupulous" conduct, Plaintiff must allege how that conduct "imposes a lack of meaningful choice or an unreasonable burden on the consumer." *Stonecrafters, Inc. v. FoxFire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 616 (N.D. Ill. 2009) (quotation omitted). The Court instructed that Plaintiff could demonstrate lack of meaningful choice or an unreasonable burden on him by alleging that he was "lock[ed] . . . into a contractual arrangement" for his insurance that "he could not exit even after learning of Tesla's [alleged] charging practices" and facts supporting that statement. Order at 21.

Despite these clear instructions, Plaintiff never alleges that he was locked into a contractual insurance arrangement. Nor has he attached his TIS contract or any other document showing he is "locked into" any contract, despite owning his vehicle for years and claiming he was enrolled in TIS since at least March 14, 2023, when he filed his original complaint. *See* ECF No. 1-1. Indeed, the website he cites in the SAC notes that, like any insurance policy, the TIS policy is subject to

periodic renewals.[4]  He never alleges that any such renewals are automatic or mandatory, much less that he has no choice but to accept them.  His failure to do so despite allegedly being enrolled in TIS for years speaks volumes as to his inability to plead facts regarding this *Sperry* prong.

Instead of alleging facts showing that he is locked into an insurance contract, Plaintiff alleges that he has no meaningful choice because "Defendant exclusively advertised its Tesla Insurance product as the sole product that could utilize the sensors on its vehicles to provide driving-behavior based insurance."  SAC ¶ 58.  But the pages cited in the SAC introducing TIS[5] and describing how the Safety Score works[6] do not make that statement.  Nor does Plaintiff quote or cite any other advertisement containing this statement, let alone allege that he saw such a statement and it prompted him to enroll in TIS insurance.  In any event, plaintiffs fail to allege unfair practices claims where they have available alternatives, even if those alternatives are not the exact same as the allegedly unfair practice.  *See, e.g.*, *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) (affirming dismissal of ICFA unfair practices claim where plaintiff "was in no way forced to buy" an insurance policy and as a result "there was a total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness" (quotation omitted)); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 610 (7th Cir. 2013) (affirming dismissal of ICFA unfair practices claim where there were "no allegations . . . of threats to take illegal, immoral, or otherwise wrongful action" against the plaintiff and she "could have gone elsewhere to buy cheaper insurance" (quotation marks omitted)); *Fleury*, 654 F. Supp. 3d at 734 ("Before buying the 2016 Impala, he could have asked questions about the meaning of Flex Fuel capability.  Now,

---

[4] https://www.tesla.com/support/insurance/safety-score#version-2.1 (under "When will I be upgraded to the latest version of Safety Score?" FAQ response) (last accessed Jan. 14, 2025).  Indeed, Plaintiff has the option of cancelling his policy at any time, including after he has received a preview of his upcoming premium payment (which is based in part on his Safety Score).
[5] https://www.tesla.com/insurance (last accessed Jan. 14, 2025).
[6] https://www.tesla.com/support/insurance/safety-score#version-2.1.

he can avoid damaging the car by alternating between filling up with E85 and gasoline. Or he can sell the car. Thus, Fleury has failed to allege an immoral, unethical, oppressive, or unscrupulous practice."). Tellingly, Plaintiff does not allege—nor could he—that Tesla owners must purchase insurance from TIS as opposed to insurance from any other carrier. Plaintiff's conclusory allegation of lack of choice falls far short of what is required to plead a claim under this factor.

2. <em>Plaintiff has not sufficiently alleged a substantial injury to consumers.</em>

The next *Sperry* factor considers whether a defendant's practice "causes substantial injury to consumers," meaning that it causes "significant harm to the plaintiff *and* has the potential to cause injury to a large number of consumers." *Stonecrafters*, 633 F. Supp. 2d at 617 (emphasis added). The Court noted that Plaintiff "alleged no facts regarding [his injury's] significance, despite that information being in his possession," and laid out specific ways that Plaintiff could potentially supplement his complaint to allege such facts—showing "just how much his insurance premiums increased" and "shed[ding] . . . light on when those increases occurred relative to the 'phantom braking' incidents he experienced." Order at 22.

Despite this direction from the Court, the SAC still does not contain facts raising Plaintiff's right to relief above the speculative level. *See Twombly*, 550 U.S. at 555. To start, he alleges that the premiums he paid are "calculated based on a formula that factors in each 'Forward Collision Warning[] per 1,000 Non-Autopilot Miles.'" SAC ¶ 31. But he fails to mention how that formula consists of *seven other factors*: hard braking, aggressive turning, unsafe following, excessive speeding, late-night driving, forced autopilot disengagement, and unbuckled driving.[7] He pleads no facts isolating the purported false collision warning defects and showing how that sole factor drove his allegedly increased premiums. While he tries to skirt this requirement with a barebones

---

[7] *See id.*

11

allegation that he "recalls that he experienced false collision warnings in the months that his Safety Score decreased and his premiums increased," SAC ¶ 33, he never alleges whether or how often he activated Autopilot mode, a critical flaw because "[m]iles driven while Autopilot is engaged *are not used to determine the Forward Collision Warnings per 1,000 Miles*," and such miles "*are not considered when calculating the . . . Safety Score*."[8] He claims that this type of information is in Defendant's "sole custody and control," SAC ¶ 32, but the same website he relies on informs users how to "learn more about how an event contributes to each Safety Factor" (including via the owner's manual).[9] This wealth of information forecloses Plaintiff's effort to short-circuit his pleading obligations by claiming that he cannot supply the required facts to support his claim.

Plaintiff's failure to allege such facts is particularly troubling because—despite having been enrolled in TIS for over 46 months—he alleges only *two examples* of how his premiums purportedly increased as a result of the alleged defect: (1) he "paid $319.45 in insurance premiums to Tesla Insurance in August 2024 when he was assigned a Safety Score of 67" and (2) in "October 2024, when he did not experience any false collision warnings, his insurance premium went down to $175.70 with a Safety Score increasing to 85." SAC ¶ 34. But this sole example does not pass the plausibility test because he also alleges that the Safety Score "at the end of the month determines your *next* month's premium." *Id.* ¶ 31 (emphasis added). In other words, to correlate his allegedly inflated $319.45 August insurance premium and his Safety Score, he would actually need to allege his *July* Safety Score. And to provide any support for his October 2024 premiums being lower due to the purported lack of false collision alerts, he would need to allege his *September* Safety Score. Further, the number of factors that impact the Safety Score means that

---

[8] https://www.tesla.com/support/insurance/safety-score#forward-collision-warning-impact (emphasis added).
[9] https://www.tesla.com/support/insurance/safety-score#safety-factors-safety-score-event.

many different changes in behavior—*e.g.*, driving more slowly, braking differently, and avoiding late-night driving—all could have contributed to a higher (or lower) Safety Score in August and October 2024, and Plaintiff alleges no facts regarding such other behavior. Finally, even if he could allege such facts, his allegation stating his insurance premium was lower in October than August 2024 directly contradicts his claim that his "monthly insurance premium have [*sic*] increased since he first enrolled in Tesla Insurance." *Id.* ¶¶ 30, 34.

These myriad factual flaws and open questions mean that these allegations of increased premiums do not allow the inference of "more than the mere possibility of misconduct," *see Yeftich*, 722 F.3d at 915, and cannot show the significant injury that *Sperry* requires. He also cannot show that the relationship between the Safety Score and insurance premiums has the potential to injure a large number of consumers, since consumers who safely drive their vehicles may have high Safety Scores and therefore be satisfied with their insurance premiums. The lack of any specific factual allegations about other consumers (especially since Plaintiff is the sole class representative) is a telling omission that confirms he cannot satisfy this factor.

> 3.   *Plaintiff has not alleged that Defendant's alleged practice offends public policy.*

The remaining *Sperry* factor considers whether the challenged practice "offends public policy." *Batson*, 746 F.3d at 380. Plaintiff attempts to meet this factor simply by claiming that the same purportedly deceptive conduct pleaded in the FAC "offends public policy." SAC ¶ 57.

That type of legal conclusion should be disregarded. *See Leszanczuk v. Carrington Mortg. Servs., LLC*, 21 F.4th 933, 940 (7th Cir. 2021) ("A practice offends public policy if it violates a standard of conduct embodied in a statute, the common law, or otherwise[.]"); *DeMonte v. Apple Inc.*, No. 23 C 1133, 2024 WL 4119141, at *7 (N.D. Ill. Sept. 9, 2024) (Plaintiff failed to plead violation of public policy where the complaint "contain[ed] no allegations about that policy nor

[did] it describe how Defendants' conduct violated it.").  The Seventh Circuit has also rejected the argument that a defendant's conduct was unfair under the ICFA because it "was a kickback and kickbacks are against public policy," explaining that "simply calling the [challenged practice] a kickback [did not] make it one."  *Cohen*, 735 F.3d at 610–11; *see also Wigod v. PNC Bank, N.A.*, 338 F. Supp. 3d 758, 770 (N.D. Ill. 2018) (similar).  Conclusory allegations that a practice violates "public policy" are not enough, especially since the Illinois Supreme Court has held that incurring additional expenses due to a non-disclosure (as Plaintiff alleges here) is not the kind of "conduct in violation of public policy" necessary to establish unfairness.  *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 963 (Ill. 2002).

The Court previously observed that "[a]ssuming the truth of [Plaintiff's] allegations, it is difficult, if not impossible, to conceive of a sound public policy for permitting insurers to overcharge consumers for unfounded reasons."  Order at 20.  But even taking Plaintiff's allegations as true, he does not plead facts showing that he was overcharged for "unfounded" reasons since he does not isolate the impact of purported false collision warnings or account for myriad other driving behaviors.  Rule 8 requires allegations "plausibly suggesting (not merely *consistent with*)" unlawful conduct.  *Twombly*, 550 U.S. at 557.  Plaintiff's allegation that he happened to pay a higher insurance premium in a month with a lower safety score is at most merely consistent with his theory that alleged false collision warnings impacted his score but does not cross the plausibility threshold.  But even assuming that this *Sperry* factor favored Plaintiff (it does not), it would not be sufficient to state an ICFA unfair practices claim without more.  *See* Order at 20–22.

## III.  This Court Should Stay Count II Due to the Parallel California Action.

Alternatively, even if Plaintiff's amendments were somehow deemed sufficient to cure the deficiencies previously identified by the Court *and* the Court finds that Plaintiff has standing to sue Tesla, Inc. based on policies issued by TIS, Count II should (at a minimum) be stayed due to

the duplicative California class action pending against TIS.

A federal court can stay or dismiss an action based on a pending case in state court under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Abstention is appropriate here because the California action is substantially similar to this one: an Illinois plaintiff is asserting statutory consumer protection claims (including an ICFA claim) against TIS on behalf of two putative classes (including an Illinois subclass) based on the allegation that TIS overcharges for premiums due to the purported false collision warning defect. *See* Ex. 1 ¶¶ 33, 40–55. Although that case is pending against TIS (not manufacturer Tesla, Inc.), Plaintiff's unfair practices claim directly implicates TIS (as explained above), and abstention does not require exact overlap between the parties. *See, e.g.*, *Stinson v. LCS Cmty. Emp. LLC*, No. 20 CV 04603, 2021 WL 4978450, at *2 (N.D. Ill. May 3, 2021) (rejecting contention that defendants must be identical for abstention to apply and finding with "little trouble" that state class action was parallel where the "factual and legal issues" were the same and where the parties were "substantially the same" since the "plaintiffs in [the] federal case [were] class members under the proposed class definition" in the state court case, which meant there was "a substantial likelihood that the state suit [would] dispose of [the federal plaintiffs'] claims"); *Avila v. JDD Inv. Co.*, No. 21 C 1917, 2021 WL 5905627, at *7 (N.D. Ill. Dec. 13, 2021) (abstention appropriate in part because "allowing the two suits to proceed concurrently would risk duplicative rulings and potentially waste judicial resources on [a particular] claim.").

## CONCLUSION

For all of the foregoing reasons, Tesla's motion to dismiss Count II of Plaintiff's Second Amended Class Action Complaint should be granted with prejudice.

Dated: January 14th, 2025                  */s/ Susan M. Clare*
                                                Livia M. Kiser

KING & SPALDING LLP
110 N. Wacker Dr., Ste. 3800
Chicago, IL 60606
T: (312) 995-6333
lkiser@kslaw.com

Susan M. Clare
J. Franklin Sacha, Jr.
KING & SPALDING LLP
1180 Peachtree St. NE, Ste. 1600
Atlanta, GA 30309
T: (404) 572-4600
sclare@kslaw.com
fsacha@kslaw.com

*Attorneys for Defendant Tesla, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2025, I submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system. Notice of this filing will be sent to all counsel of record via the Court's CM/ECF automated filing system.

<u>*/s/ Susan M. Clare*</u>
Susan M. Clare
*Attorney for Defendant Tesla, Inc.*