## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOSHUA SANTIAGO, individually and on behalf of others similarly situated,

    Plaintiff,

    v.

TESLA, INC., a Delaware Corporation

    Defendant.

Case No. 23 CV 2891

Judge Georgia N. Alexakis

## MEMORANDUM OPINION AND ORDER

Plaintiff Joshua Santiago brings this putative class action complaint against defendant Tesla, Inc. based on an alleged defect in his 2020 Tesla Model 3. In November 2024, the Court granted in part and denied in part Tesla's motion to dismiss Santiago's first amended complaint. [44]. After the Court granted him leave to amend, Santiago filed a second amended complaint with new allegations related to his unfair practices claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). [48]. Tesla now moves to dismiss Count II of Santiago's second amended complaint. [53]. For the reasons discussed below, the Court grants Tesla's motion.

## LEGAL STANDARDS

Article III of the U.S. Constitution limits federal courts to adjudication of "Cases" and "Controversies." U.S. Const. art. III, § 2. "Standing to bring and maintain a suit is an essential component of this case-or-controversy requirement." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013). To establish he has standing,

Santiago must allege (1) he has suffered an "injury in fact," (2) there is a "causal connection between the injury and the conduct complained of," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). To establish causation, "the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* at 560 (cleaned up) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). In determining whether standing exists, the Court takes all well-pleaded allegations of the complaint as true unless they are refuted in a defendant's affidavit. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need only contain factual allegations that, accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the pleading stage, the Court must "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff."

2

*Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). But "allegations in the form of legal conclusions are insufficient." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

BACKGROUND

The Court assumes familiarity with the facts of this case as outlined in its November 22, 2024 order. *See* [44]. In November 2024, the Court granted in part and denied in part Tesla's motion to dismiss Santiago's first amended complaint. *See generally id.* Specifically, the Court determined that Santiago had stated an ICFA claim to the extent he alleged that Tesla engaged in an omission-based deceptive practice by failing to warn buyers about the false collision warning defect in its cars. *Id.* at 13–17. However, the Court dismissed Santiago's ICFA claim based on an unfair practice. *Id.* at 18–22. Relying on *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014), the Court held that the false advertising Santiago alleged as part of his unfair practices claim was "entirely grounded" in his claim that Tesla engaged in deceptive practices. [44] at 19. As a result, and pursuant to *Camasta*, the Court declined to analyze that portion of Santiago's ICFA claim under the lower pleading threshold for an unfair act. *Id.* The Court also declined to find Santiago stated an unfair practices claim based on Santiago's inflated insurance premiums because Santiago had not alleged the factors required by *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972) (the "*Sperry* factors").

Santiago filed a second amended complaint in December 2024. [48]. Count I of the second amended complaint brings the same omission-based deceptive practices claim the Court previously found sufficient to state an ICFA claim. *Id.* ¶¶ 45–52. Count II brings an unfair practices ICFA claim, this time focusing exclusively on Tesla's actions with respect to Santiago's insurance premiums. *Id.* ¶¶ 53–61. Specifically, Count II alleges that Tesla engaged in an unfair practice when it "advertised that its Tesla Insurance product would provide Plaintiff and the other Tesla Insurance Subclass members reduced insurance premiums based on their actual driving behavior," even though Tesla knew its vehicles had the false collision warning defect and that Santiago would pay higher premiums as a result. *Id.* ¶ 57. Count II further alleges that this "imposed a lack of meaningful choice on [Santiago] as [Tesla] exclusively advertised its Tesla Insurance product as the sole product that could utilize the sensors on its vehicles to provide driving-behavior based insurance …." *Id.* ¶ 58.

Santiago alleges several additional facts to support these assertions. For example, he alleges that "[w]hile information about the exact number of false collision warnings is within [Tesla's] sole custody and control, [his] premiums have consistently increased due to false collision warnings he experienced." *Id.* ¶ 32. He further alleges that "because of false collision warnings, [he] paid $319.45 in insurance premiums to Tesla Insurance in August 2024 when he was assigned a Safety Score of 67" and that "[i]n October 2024, when he did not experience any false

collision warnings, his insurance premium went down to $175.70 with a Safety Score increasing to 85." *Id.* ¶ 34.

Now before the Court is Tesla's motion to dismiss Count II of Santiago's second amended complaint. [53].

## DISCUSSION

Tesla first argues that Santiago lacks Article III standing to pursue Count II. *See id.* at 5–7. In the alternative, Tesla argues that Count II fails to state a claim on the merits. *See id.* at 8–14. If the Court were to reject both these arguments, Tesla asks the Court to stay Count II under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), pending resolution of a related action in a California court. [53] at 14–15. Because the Court dismisses Count II on the merits, it does not reach whether Count II should be stayed pursuant to *Colorado River*.

### A. Santiago Has Article III Standing to Pursue Count II.

Tesla argues that the injury Santiago experienced in Count II is not "fairly traceable" to Tesla because a separate subsidiary named Tesla Insurance Services ("TIS") charges Santiago premiums and otherwise administers his car insurance. [53] at 1, 5–6. Because TIS and not Tesla charges him premiums, Tesla maintains that Santiago's injury "hinges on the decisions of [an] independent actor[]." *Id.* at 6 (quoting *DH2, Inc. v. SEC*, 422 F.3d 591, 597 (7th Cir. 2005)).

This argument is unpersuasive. Santiago alleges he was injured in Count II because he was overcharged insurance premiums based on his Tesla's false collision warnings. That injury is "fairly traceable" to Tesla's conduct: Although Tesla may not

have sold insurance directly to Santiago, Santiago alleges that Tesla sold vehicles knowing that they had the allegedly defective collision warning system and knowing that the alleged defect would lead to higher insurance premiums, yet all the while "exclusively" "advertis[ing] that its Tesla Insurance product would provide Plaintiff and the other Tesla Insurance Subclass members reduced insurance premiums based on their actual driving behavior." [48] ¶¶ 57–58; *see also id.* ¶¶ 59–61.

Tesla argues that causation cannot arise from the defect itself because that "would mean that the gravamen of [Santiago's] unfair practices claim is the same allegedly deceptive conduct (failing to disclose the purported defect) that is the basis of his ICFA deceptive practices claim in Count I."[1] *Id.* But this argument conflates the Article III standing inquiry with whether Santiago has stated an unfair practices claim on the merits. *See Taylor v. McCament*, 875 F.3d 849, 855 (7th Cir. 2017). "Although federal standing often turns on the nature and source of the claim asserted, it in no way depends on the merits of the claim." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 624 (1989) (cleaned up) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). Here, whether the allegations supporting Santiago's unfair practices claim overlap with his deceptive practices claim makes no difference because Article III only requires that Santiago's injury be "fairly traceable" to Tesla's challenged conduct. *Lujan*, 504 U.S. at 560–61. For the reasons already discussed, Santiago's allegations suffice.

---

[1] As Tesla correctly points out (and as discussed in this Court's previous order, *see* [44] at 19), a plaintiff cannot avoid Rule 9(b)'s heightened pleading requirement by "adding language of unfairness" to a deceptive practices claim. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

Santiago's citation to *Bennett v. Spear* further supports this conclusion. 520 U.S. 154, 168 (1997). There, the Fish and Wildlife Service ("the Service") issued a biological opinion which recommended maintaining minimum water levels on certain lakes and reservoirs in California and Oregon. *Id.* at 159. Plaintiffs who lived in those areas then sued the Service claiming they would be adversely affected by the reduction in water supply. *Id.* at 168. The Service moved to dismiss on standing grounds, arguing that plaintiffs' injury was not "fairly traceable" to the Service's biological opinion because the Bureau of Reclamation—not the Service—"retains ultimate responsibility for determining whether and how a proposed action shall go forward." *Id.* The Supreme Court disagreed. Although it acknowledged that an injury cannot be "the result of the independent action of some third party not before the court," it found that Article III does not exclude injuries that are "produced by determinative or coercive effect upon the action of someone else." *Id.* (cleaned up) (quoting *Lujan*, 504 U.S. at 560–61).

Tesla attempts to distinguish *Bennett* by arguing that such a "'determinative or coercive effect' does not exist here because [Santiago] alleges no facts about the relationship between Tesla, Inc. and TIS, never explains how the alleged advertisements impact TIS's premium calculations, and does not allege that Tesla, Inc. exerts any control over TIS's handling of insurance premiums." [55] at 2–3. The Court disagrees that any more detailed allegations are required. Santiago clearly alleges that "[d]ue to [his Tesla's] false collision warnings … [his] monthly insurance premium[s] have increased since when he first enrolled in Tesla Insurance because

his 'Safety Score' (the score generated by Tesla based on driving habits) has decreased as the collision warnings were reported as unsafe driving events." [48] ¶ 30. This allegation sufficiently establishes a causal relationship between Tesla's actions (its manufacturing of the defect and knowing sale of vehicles containing it) and Santiago's injury (paying inflated insurance premiums) for purposes of the Article III standing inquiry.

The cases Tesla cites to support its standing argument are distinguishable. In *DH2*, a mutual fund investor claimed the SEC injured it by promulgating a rule that would cause the mutual funds in which it invested to use fair value pricing of securities, which plaintiff said would cost it money. 422 F.3d at 596. The Seventh Circuit said plaintiff had not established causation under Article III because the mutual funds had "quite broad" discretion to use fair value pricing anyway, making the alleged economic harm attributable to the SEC "only generalized and conjectural." *Id.* at 596–97. Likewise, in *Beckman v. Chicago Bears Football Club, Inc.*, plaintiff challenged a Chicago Bears policy prohibiting fans from wearing opposing team apparel to certain experiences for season ticket holders. No. 17 C 4551, 2018 WL 1561719, at *4 (N.D. Ill. Mar. 30, 2018). The Court found plaintiff lacked standing to sue the NFL because it had not established the NFL had any say over the challenged policy. *See id.* at *5 (plaintiff "must do more than show general association with the NFL to show traceability"). Here, in contrast to *DH2* and *Beckman*, Santiago's allegedly inflated insurance premiums are directly tied to Tesla's actions— they are not the result of any "independent actor[]" who might have caused the same

injury without Tesla's involvement. *DH2*, 422 F.3d at 597. Remove Tesla's defect from the equation and Santiago would never have paid inflated premiums. That is enough to make his injury "fairly traceable" to Tesla. *Lujan*, 504 U.S. at 560–61.

**B. Santiago Has Not Stated an Unfair Practices Claim Under the ICFA.**

Tesla argues in the alternative that Count II should be dismissed because Santiago has not fixed the defects the Court identified with his unfair practices ICFA claim. [53] at 7–13. On this point, the Court agrees with Tesla.

Before diving any deeper, one point of clarification: Santiago's second amended complaint does not allege that the unfair act constituting his ICFA claim is the act of charging him inflated insurance premiums.[2] This is consistent with Tesla's contention, as discussed above, that TIS and not Tesla administers Tesla's insurance program. *See supra* at 5; *see also* [53] at 1, 5–6. Instead, the unfair act Santiago alleges is that Tesla "advertised that its Tesla Insurance product would provide [Santiago] and the other Tesla Insurance Subclass members reduced insurance premiums based on their actual driving behavior," when in fact Tesla knew they would pay inflated premiums because of the defect. [48] ¶ 57; *see also id.* ¶ 59 (Tesla's "*conduct of actively advertising* its Tesla Insurance product on the same website as where it advertised the collision warning features of its Tesla Vehicles while omitting any facts about the False Collision Warning Defect … was unscrupulous and unethical") (emphasis added).

---

[2] This point was not evident from the allegations in Santiago's first amended complaint. *See* [14] ¶ 23 (Santiago's first amended complaint noting that "*Defendant* offers its own driving-behavior based insurance that adjusts vehicle owners['] premiums based on the driving data collected by its vehicles") (emphasis added).

Santiago's amended unfair practices claim still falls short. First, as discussed in the Court's November 2024 order, *Camasta* teaches that where an unfair practices claim "sounds in fraud," plaintiffs cannot avoid Rule 9(b)'s heightened pleading requirement by "add[ing] language of unfairness" so that the claim is analyzed as an unfair act. 761 F.3d at 739; *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011) (finding that an ICFA unfair practices claim that "sounds in fraud" is subject to Rule 9(b)). Here, even though Santiago labels his claim as an "unfair act," his allegations as to Tesla's insurance-related false advertising still "sound[] in fraud." *See, e.g.*, [48] ¶ 54 (Santiago alleging that, "*[i]n addition to being deceptive*, [Tesla's] conduct also constitutes an 'unfair practice' under the ICFA"); *id.* ¶¶ 57, 59 (describing Tesla's unfair practice in terms of deceptive advertising). Therefore, based on the Seventh Circuit's unambiguous directions in *Camasta* and *Pirelli*, the Court will apply Rule 9(b) to Santiago's Count II claim regarding Tesla insurance.[3]

Santiago's allegations do not allege the "who, what, when, where, and how of the fraud" required under Rule 9(b). *Camasta*, 761 F.3d at 737 (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)). Instead of pointing to a particular advertisement or communication, he only generally alleges that Tesla "advertised" that its insurance program would reduce his premiums. [48] ¶ 57. He does not allege

---

[3] As stated in its previous order, the Court recognizes some ambiguity between *Camasta* and the Seventh Circuit's later decision in *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019). However, even if the Court's interpretation of *Camasta* is mistaken, the Court would reach the same outcome because Santiago does not adequately allege that Tesla's insurance-related advertising caused his injury. *See infra* at 11–13.

when, where, or how this advertisement reached Santiago, and such barebones allegations of deceptive conduct fall short under Rule 9(b). *See Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (Rule 9(b) requires that a plaintiff state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated"); *see also Camasta*, 761 F.3d at 737 (concluding that plaintiff failed to meet Rule 9(b) where he only alleged that an advertisement said merchandise was being offered at "sale prices" and was "on sale" but offered no other details about the misrepresentation).

Even if Santiago had satisfied Rule 9(b), Count II falls short for a second, independent reason: Santiago fails to allege that Tesla's insurance-related advertising caused his injury for purposes of the ICFA. To state a claim under the ICFA, the plaintiff must show its injury was proximately caused by defendant's actions. *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 476 Ill.Dec. 694, 702 (2024). "Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014); *see also Bennett*, 520 U.S. at 168–69 (distinguishing injury that is "fairly traceable" from "injury as to which the defendant's actions are the very last step in the chain of causation"). Here, although Santiago's injury is fairly traceable to Tesla's conduct sufficient to satisfy Article III, he must separately show that Tesla's advertisement was a proximate cause of his injury. *Id.*

11

"In order to establish the element of proximate causation [under the ICFA], a plaintiff must prove that it was actually deceived by the misrepresentation." *Tri-Plex Tech. Servs.*, 476 Ill.Dec. at 702. "If the plaintiff has neither seen nor heard a deceptive statement, it cannot have relied on the statement and, consequently, cannot prove that the statement was the proximate cause of its injury." *Id.*; *see also De Bouse v. Bayer*, 235 Ill.2d 544 (2009) ("If a consumer has neither seen nor heard [the allegedly fraudulent advertisement], then she cannot have relied on the statement and, consequently, cannot prove proximate cause.").

Unlike the allegations supporting his omission-based deceptive practices claim, Santiago does not say that he relied on or was otherwise influenced by Tesla's advertisement when deciding to purchase Tesla insurance. *Compare* [48] ¶ 50 (alleging that he "reasonably relied" on Tesla's advertisements related to the safety of Tesla vehicles "in choosing to purchase" his Tesla), *with id.* ¶ 61 (alleging only generally that he paid increased insurance premiums "[a]s a direct and proximate result of Defendant's unfair conduct"). Santiago does allege that Tesla's "conduct in selling its vehicles" with the defect injured him by inflating his premiums, but as discussed above, the alleged "unfair act" is Tesla's advertising of its insurance program, not the sale of defective vehicles. *Id.* ¶ 60. Because Santiago in no way alleges that the advertising itself caused his injury, he has failed to state an ICFA unfair practices claim. *See Gurrola v. Ford Motor Co.*, No. 23-CV-3438, 2025 WL 843666, at *16 (N.D. Ill. Mar. 18, 2025) ("The complaint does not allege that the [plaintiffs] ever saw the statement in question, so the complaint fails to state a

12

claim."); *Garland v. Children's Place, Inc.*, No. 23 C 4899, 2024 WL 1376353, at *6 (N.D. Ill. Apr. 1, 2024) (plaintiffs "cannot premise their ICFA claims on these statements because they did not read or otherwise become aware of either statement before making their purchases").

The Court therefore grants Tesla's motion to dismiss Count II of Santiago's second amended complaint.

CONCLUSION

For the foregoing reasons, the Court denies Tesla's motion to dismiss Count II for lack of Article III standing but grants Tesla's motion to dismiss Count II for failure to state a claim with prejudice. Because Santiago has already had two opportunities to amend his complaint, *see* [14]; [48], the Court will not allow him another opportunity to replead.

Tesla has until 7/8/25 to answer Count I of Santiago's second amended complaint. [53] at 1. The stay on discovery imposed by the district court previously assigned to this matter [17] is lifted. The parties are directed to appear on 7/15/25 at 9:30 a.m. for a status hearing to discuss next steps in the case, including a timeline for fact discovery or settlement discussions if there is mutual interest for such discussions.

Georgia N. Alexakis
United States District Judge

Date: 6/17/25